
F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   JUN 3 0 2015   ★

LONG ISLAND OFFICE

## 15-CV-0014
## 15-CV-0015



IN THE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| AHRON BERLIN, | ) | Appeal, |
| ——————————— | ) | |
| Appellant, | ) | from the UNITED STATES |
| | ) | BANKRUPTCY COURT |
| | ) | EASTERN DISTRICT OF NEW YORK |
| | ) | |
| v. | ) | Case No. 8:12-AP-08371 |
| | ) | Hon. Robert E. Grossman |
| ELLIOT ZARETSKY, | ) | |
| HAROLD ZARETSKY, | ) | |
| SHIRLEY ZARETSKY, | ) | |
| AND MAXI-AIDS, INC., | ) | |
| ——————————— | ) | |
| Appellees. | ) | |
| | ) | |

# APPELLANT'S BRIEF

AHRON BERLIN
1909 New York Avenue
Brooklyn, NY, 11210
347-254-3532
APPELLANT  PRO SE

## LIST OF PARTIES AND COUNSEL

Defendant-Appellant:                    Ahron Berlin

Defendant-Appellant's Counsel:          Pro Se


Plaintiffs-Appellees:                   Elliot Zaretsky,
                                        Harold Zaretsky,
                                        Shirely Zaretsky,
                                        Maxi-Aids, Inc.,

Defendants-Respondents' Counsel:        Brian J. Hufnagel, Esq.
                                        Forchelli, Curto, Deegan,
                                        Schwartz, Mineo & Terrana, LLP.
                                        The Omni,
                                        333 Earle Ovington Blvd, Suite 1010,
                                        Uniondale, New York 11553
                                        Tel (516)248-1700
                                        Fax (516) 248-1729
                                        bhufnagel@forchellilaw.com

# Table of Contents

Table of Authorities ...................................................................................3

Jurisdictional  statement.............................................................................5

Issues presented for review ........................................................................5

Standard of review .....................................................................................6

Statement of the case..................................................................................6

Statement of fact ........................................................................................8

    David Wacholder and the state libel suit ...............................................8

    The inquest and resulting judgment......................................................11

    The motions to vacate and ensuing appeals .........................................13

    The Bankruptcy proceedings and summary judgment motion ...............14

    The pre-trial memorandum...................................................................16

    The Bankruptcy court trial ..................................................................17

    The Bankruptcy court's decision and judgment....................................20

    The motion to alter or amend judgment ...............................................20

Argument...................................................................................................23

    I.    The Court in finding a Willful and Malicious Intent, Improperly Applied Preclusion under New York Law...................................................23

    A.  Unopposed Default Summary Judgment is Not Preclusive...........23

        Introduction and Procedural History.............................................23

        Analysis.......................................................................................24

        Applicability................................................................................32

    B.  Appellant Had  no Full or Fair Oppurtunity. .................................35

    C.  There is No Preclusion if the State Action was Procured by Fraud.............37

    II.  Record is Insufficient For a Finding of Willful and Malicious Intent ..........39

    III.  Appelant Did Not Get A Fair Trial.............................................42

Conclusion .................................................................................................44

## TABLE OF AUTHORITIES

<u>CASES</u>                                                                           <u>PAGE</u>

<u>AUSA Life Ins. v. Ernst and Young</u>, 206 F.3d 202 (2nd Cir., 1998)..................................4

<u>Babitt v. Vebeliunas (In re Vebeliunas)</u>,
332 F.3d 85, 90 (2d Cir. 2003) ........................................................................................4

<u>Denton v. Hyman (In re Hyman)</u>,
502 F.3d 61, 65 (2d Cir. 2007) ........................................................................................4

<u>Evans v. Ottimo</u>, 469 F.3d 281 (2nd Cir., 2006) ...........................................................23

<u>Kelleran v. Andrijevic</u>, 825 F.2d 692, 694 (2nd Cir., 1987) ..........................................24

<u>Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.</u>,
373 F.3d 241, 246 (2nd Cir., 2004) ................................................................................24

<u>Jackson v. Fed. Express, 766 F.3d 189 (2nd Cir., 2014)</u>................................................25

<u>Liberty Taxi Management, Inc. v. Gincherman</u>,
32 AD3d 276, 820 N.Y.S.2d 49,
2006 NY Slip Op 6207 (N.Y. App. Div., 2006)..............................................................27

<u>Ramos v. City of New York</u>,
61 A.D.3d 51, 872 N.Y.S.2d 128,
2009 NY Slip Op 636 (N.Y. App. Div., 2009)................................................................28

<u>S.D.I. Corp. v. Fireman's Fund Ins. Companies</u>,
617 N.Y.S.2d 790, 208 A.D.2d 706
(N.Y.A.D. 2 Dept., 1994) ...............................................................................................30

<u>Caplan v. Winslett</u>,
637 N.Y.S.2d 967, 971,  218 A.D.2d 148
(N. Y. A. D. 1 Dept., 1996) ............................................................................................33

<u>Connecticut General Life Ins. Co. v. Cole</u>,
821 F.Supp. 193, 201 (S.D.N.Y., 1993) .........................................................................35

<u>Cameron v. Int'l Trading Co., Inc. v. Hawk Importers, Inc.</u>,
03-CV-02496 JS, 2010 WL 4568980 at *4
(E.D.N.Y. Nov. 2, 2010) .................................................................................................39

<u>US v. Local 1804-1, Intern. Longshoremen's Ass'n</u>,
812 F. Supp. 1303, 1323 (S.D.N.Y., 1993), ..................................................................39

<u>Wellness Int'l Network, Ltd. v. Sharif,</u>
U.S. No. 13-935,  575 U. S. ____ ,  Pg. 22,
(May 26, 2015)., ............................................................................................... 40

<u>Weisfelner v. Blavatnik (In re Lyondell Chem. Co.),</u>
467 B.R. 712, 722 (S.D.N.Y., 2012). ............................................................... 40

---

## <u>STATUTES & RULES</u>

28 U.S.C. §158(a)(1) .......................................................................................... 4

11 U.S.C. 523(a)(6) ........................................................................................... 4

F.R.C.P. Rule §59 ............................................................................................ 20

F.R.B.P. Rule §8002(b)(B) ................................................................................. 5

F.R.B.P. Rule §8013 .......................................................................................... 5

## <u>OTHER AUTHORITIES</u>

N.Y. C.P.L.R. §5015(a)(1) ......................................................................... 28, 29

N.Y. C.P.L.R. §4212 ................................................................................... 32, 33

N.Y. C.P.L.R. §4311(b) .................................................................................... 33

## Jurisdictional statement

The jurisdictional basis for this appeal is contained in 28 U.S.C. §158 (a)(1). This appeal is of a final bankruptcy court judgment of the Honorable Robert E. Grossman signed and entered on June 19, 2014, and from a final order denying the motion to alter or amend judgment signed on November 7, 2014 and entered on November 10, 2014. Under section 158(a)(1), this Federal district court has jurisdiction over appeals of final orders of the bankruptcy court. A notice of appeal was timely filed on November 20, 2014 for both the judgment and order pursuant to FRBP 8002(b)(B).

## Issues presented for review

Did the court err in finding that the state court judgment was preclusive as to any issue other than the willful and malicious issue under 11 U.S.C. 523(a)(6).

Did the court err in refusing to consider that appellant did not have a fair opportunity to litigate in state court, so as to avoid preclusion.

Did the court err in refusing to hear and consider that the state court action was fraudulently procured.

Did the court err in not affording appellant a fair trial.

## Standard of review

This appeal Under Rule 8013 of the Federal Rules of Bankruptcy Procedure, this Court may review, modify, affirm in whole or in part, or vacate in whole or in part the Bankruptcy Court's legal conclusions and may set aside.

In general, the Court reviews the Bankruptcy Court's legal conclusions de novo, mixed questions of fact and law de novo, and factual findings for clear error. See Denton v. Hyman (In re Hyman), 502 F.3d 61, 65 (2d Cir. 2007); Babitt v. Vebeliunas (In re Vebeliunas), 332 F.3d 85, 90 (2d Cir. 2003).

The district court's application of the facts to draw conclusions of law, including a finding of liability, is subject to de novo review. AUSA Life Ins. v. Ernst and Young, 206 F.3d 202 (2nd Cir., 1998)

## Statement of the case

Appellant was sued by Maxi-Aids and the Zaretsky's in September of 2008 for libelous emails. On January 9, 2009, the state court granted unopposed summary judgment against appellant.  An inquest was held on May 7, 2009, which was adopted by the state court on November 2, 2009.  Thereafter, on May 15, 2012 appellant filed Chapter 13, later converted to Chapter 7, and on September 24, 2012 plaintiffs filed the adversary proceeding objection to dischargeability , A19.

6

The Bankruptcy court held a trial on November 5, 2013, A99, to determine if there was a willful and malicious intent so as not to discharge appellants debt to Maxi-Aids and Zaretsky of $1,290,000 plus annual interest, now over two million.

On June 19, 2014 the court issued a decision and judgment, A210, adjudging the debt not dischargeable for a willful and malicious intent, a motion to alter judgment was filed and denied, and this appeal followed, A221.

During the proceedings in Bankruptcy court, trial and after trial, appellant sought to raise the issue of fraudulent procurement of the state action by appellees, similarly, appellant sought to raise that he did not have a full or fair opportunity in the state action, and he also argued that the state action was not preclusive.

Appellant sought to prove that he did not send the emails, neither did he author them, and that he was a victim of a fraud, however, he was unable to do so, because the court ruled that the state court action was preclusive to all and every issue excluding willful and malicious intent, and the court also refused to hear and consider appellants argument of not having had a fair opportunity and of the fraudulent procurement.

Appellant argues that there is no preclusion from the prior state action, and that he had no opportunity to litigate the state action, which was also procured by fraud, and appellant seeks to have the judgment reversed and discharged from the

7

debt, due to there not being enough of a record to prove willful, and because appellant did not have a fair trial, and because of the fraudulent procurement.

In the alternative appellant seeks reversal and a trial de novo, allowing to raise all issues with no preclusion from the state court.

## Statement of fact

### David Wacholder and the state libel suit

Appellants daughter Feige Zaretsky and appellee Harold Zaretsky were married and living together for ten years until their divorce proceedings began in around September 2004, A121-122.

On about September, 2004 Feige had arrested Harold for assault and beating, A125. Shortly thereafter divorce proceedings were initiated against Feige, subsequently  Elliot Zaretsky was arrested by appellants son Nachman Berlin for making death threats, Appellant supported Feige throughout her Divorce proceedings, R. at 589 (ECF 1.18)

Appellant had never been schooled to speak, write or read in the English language and began to study English in 2010 as a result of the defamation action against him,  R. at 585 (ECF 1.18).

During the Divorce proceedings a person named David Wacholder represented himself as a legal professional and attorney, he was eventually retained to handle legal matters of Feige's divorce,  R. at 590 (ECF 1.18).

David Wacholder had gained access to appellants home and ground floor office and computer at all hours of the day.

During the Summer of 2008, David Wacholder had written and sent papers to appellee Elliot Zaretsky at appelle's request,  R. at 591 (ECF 1.18).

On about September 26, 2008  the plaintiff-appellees filed a defamation lawsuit in Nassau county State Supreme court, (the "defamation action") alleging inter that defendant-appellant and his daughter Feige Zaretsky had authored and sent false and libelous emails defaming appellees, R. at 592 (ECF 1.18).

Said emails were drafted and sent by David Wacholder from both appellants office and computer, and also from appellants daughter Feige's phone and email. Appellant had never sent these emails. R. at 591(ECF 1.18).

After appellant found out about the lawsuit, David Wacholder suggested to appellant that for attorney fees he would handle the libel suit against appellee and his daughter.  Defendants trusted Wacholder and retained him believing he was an experienced legal professional and trial lawyer. R. at 592 (ECF 1.18).

9

Thereafter, David Wacholder drafted and served a response to the defamation titled Emergency First Response and Request for Added Time,  R. at 592 (ECF 1.18).

During November, 2008 appellees through their counsel Micheal D. Solomon, served a motion for summary judgment made returnable for December 5, 2008,  R. at 593 (ECF 1.18).

Wacholder then falsely insisted to appellant that the opposition to said motion for summary judgment was returnable by December 10, 2008 only, and that such opposition need only be mailed and postmarked on that day, and that no court appearance was required on the purported return date, and that it was not necessary for appellant to refute the allegations in the complaint.  Appellant again trusted Wacholder, however not without insisting that he must include in the opposition an upfront statement refuting the allegations in the complaint. Wacholder then titled his response: Reply to Second OSC Due Dec 10 2008,  and appellant on December 10, 2008 mailed and served the papers to both Mr. Solomon and the State court,  R. at 595 (ECF 1.18).

On December 12, 2008 Mr. Solomon sent a letter to the Judge in the defamation action Hon. Thomas E. Feinman, stating he is rejecting appellants opposition papers as being untimely,  R. at 596 (ECF 1.18).

On January 9, 2009 Justice Feinman issued an order granting appellees summary judgment based on appellant not opposing the motion,  A 25

Said order ordered an inquest for damages and ordered all issues pertaining to damages to be heard and reported or determined at such hearing on March 4, 2009.  It further ordered that appellees must served this order with notice of entry by regular and certified mail said order to appellants.  Additionally, the order required that a note of issue to be filed ten days before the hearing.

Appellees had mailed only to one defendant by certified mail, while appellant had not received such mail,  R. at 602 (ECF 1.18).

Appellees had not complied with the notice of entry requirement and neither with the note of issue.   R. at 598 (ECF 1.18).

### The inquest and resulting judgment

Thereafter, On November 6, 2009 Micheal Solomon filed a motion to confirm the hear and report findings of the inquest which was held on May 7, 2009, attached to the motion was a copy of the inquest transcript, R. at 611 (ECF 1.18).

The report of the inquest held before Special Referee Hon. Lawrence M. Schaffer, stated that the summary judgment was issued primarily at the default of appellant and all allegations and liability was therefore deemed admitted, A40.

11

Prior to having been served with said motion, appellant had no knowledge or notice that the inquest had been rescheduled repeatedly four times and a final inquest for damages was held on May 7, 2009.  Appellants never received any notice whatsoever of the rescheduling, nor of the final date on May 7, 2008, and were unable to attend not having knowledge of same, R. at 599 (ECF 1.18).

Meanwhile, the defamation court had already entered an order on November 2, 2009  adopting and confirming the inquest findings, this order was also faxed by the court to Mr. Solomon on November 5, 2009, a day before he filed the aforesaid motion, this was unknown to appellant,  R. at 610 (ECF 1.18).

Mr. Solomon thereafter served appellant the order of adoption only on about November 20, 2009, some two weeks after he received it and after the aforementioned motion to confirm had been filed R. at 614 (ECF 1.18). Subsequently Mr. Solomon withdrew his motion on the court's direction, R. at 613 (ECF 1.18).

On December 1, 2009 the court entered an judgment against appellant in the amount of 1,290,000 plus interest, R. at 614 (ECF 1.18).

During the ensuing months Mr. Solomon commenced discovery and contempt proceedings against appellant and also attempted to foreclose and sell appellants daughter's house on the judgment, R. at 615-617  (ECF 1.18).

12

### The motions to vacate and ensuing appeals

On May 18, 2010 David Wacholder drafted and submitted pseudo motion full of incomprehensible ramblings, seeking to vacate the  unopposed summary judgment dated January 9, 2009, R. at 619 (ECF 1.18).

During July 2010, appellant became apprised that David Wacholder was not an attorney, and that he was ignorant of writing English properly, appellant was still unaware of information that Wacholder had confided he was sending the emails at the appellees request, R. at 619 (ECF 1.18).

On July 27, 2010 Justice Feinman denied the Wacholder motion to vacate, stating in 9 words: the defendants motion to vacate defendants default is denied, there were no findings or reasons for the denial, A30.

Immediately thereafter, on August 3, 2010 appellant filed a motion to vacate based on inter alia the misrepresentations and misguidance of David Wacholder and of issues surrounding appellees unopposed summary judgment, A25.

In response to the motion, Justice Feinman issued an order recusing himself from the case altogether, stating: the court on its own motion recusing itself, no reasons or grounds were given by the court, A39.

Said motion to vacate dated August 3, 2010 was then referred to Justice Mc Carty, who thereafter on September 13, 2010 denied the motion with a single sentence stating: that the first motion to vacate denial is law of the case, A30.

Appellant thereafter timely filed a notice of appeal of the denial to the NY Appellate Division Second Department, the appeal was subsequently perfected and a reply filed as well, but was frozen due to appellants Bankruptcy chapter 7 filing. Said appeal is still pending since the Bankruptcy filing, A45-47

Thereafter, two subsequent motions to vacate were filed and denied by Justice Jaeger based primarily on the same law of the case of the first blank denial statement as Justice Mc Carty did, with the exception of two issues, one, the notice of entry, two, not admitting the evidence which claimed that David Wacholder had conspired with Elliot Zaretsky, stating it was hearsay specifically as to Elliot,  Said orders were also appealed and are currently pending appeals which were frozen by the appellants Bankruptcy filing,  R. at 895 (ECF 1.21).

## The Bankruptcy proceedings and summary judgment motion

Appellant during May 2012 filed a Bankruptcy petition for Chapter 7, which stayed all proceedings in State court,  R. at 895 (ECF 1.21).

On September 24, 2012 appellees filed an adversary proceeding and complaint objecting to dischargeability of the defamation debt, A19.

14

On May 30, 2013 appellees filed a motion seeking summary judgment, based on the state action findings, R. at 560-564 (ECF 1.14). Appellees also claimed appellant had a full and fair opportunity, citing the prior denials of the motions to vacate in the defamation action, which gave no grounds or findings and were primarily based on the same law of the case applied to the first Wacholder motion denial by Justice Feinman, A30 .

On June 24, 2013 appellant filed an opposition and cross motion, claiming inter alia fraud, R at 870-875 (ECF 1.19) and that in any event there was no finding or that there should be no preclusion due to not having an opportunity, and that in any event appellant had no full or fair opportunity to defend the defamation action, R. at 893-896 (ECF 1.21).

On July 22, 2013 the Bankruptcy Court held a hearing on the motion and denied the motions, setting a date for trial on November 5, 2013, A62.

The court also ordered the parties to file a joint pre-trial memorandum on October 29, 2013, and that the parties should communicate and exchange pre-trial memorandum to allow timely submission and preparation, A64.

The court also stated at said hearing that, it will not consider any of appellants arguments on the issue of fraud or behavior in defamation action, A55, The court added that the defamation action was res judicata on liability, and the

court would not consider any argument of fraud or the like to look behind, A53. Similarly the court stated so at trial, A102.

However, at said hearing after the aforementioned statements by the court the denial of the motions, Appellees counsel stated that the defamation action did not contain clear findings as to whether appellant either authored or sent the emails, the court agreed, A64.

### The pre-trial memorandum

Subsequently, on October 28, 2013 during a hearing in court regarding replacement of appellees counsel and Elliot Zaretsky having stated he will proceed pro-se, appellant then raised the issue that that he was prejudiced, as counsel had never gave him any pre-trial memorandum, and he was unprepared to defend the action, A80, after having raised in a motion dated October 25, 2013 that appellees had deliberately caused the replacement in an apparent cover up, intended to prejudice appellant in preparing for trial, A80.

The court refused to consider appellants arguments, when appellant was unable to continue fully inform the court of the issue of the pre-trial memorandum misconduct of appellees and the court ordered to proceed to trial nonetheless the following week, A81.

Appellees new counsel then filed the pre-trial memorandum the next day after having sent appellant his memorandum and issues for the first time on 2pm that day,  A87.

Upon receipt of the pre-trial memorandum, appellant noticed among other issues how the appellees had now suddenly changed their position from that of July 22, 2013 that there were no findings in state court on weather appellant sent the emails, to now claim there was a clear finding giving rise to preclusion,  A92-95.

### The Bankruptcy court trial

At trial the court reiterated that it will not allow to raise nor will it consider any issue of conduct in the defamation action, nor fraud, A102.

At trial counsel for appellees made an opening statement, claiming the state action precluded appellant from arguing he did not sent or authored the emails, and that the only issue triable is therefore appellants conduct and intention upon sending those emails,  A102 .

Counsel in his opening statement stated that appellant falsely defamed Appellees in that the emails falsely said: that Maxi-Aids diverted resources from third world countries; that Maxi-Aids was hurting the handicapped; that Harold was falsely accused in not supporting Feige, and that appellant made it a mission to

17

destroy Elliot Zaretsky and his family; and that Harold engaged in domestic violence, A105.

Appellant immediately thereafter stated he will rebut counsel's statements including that there was no finding, at closing argument after all testimony,  A106.

During cross examination of the first witness Elliot Zaretsky while attempting to introduce evidence that appellant had not sent the emails and there could not have been an intention, the court before hearing appellants arguments ruled that the state court action fully precluded appellant from arguing that he did not send neither authored any of the emails, the court barred appellant to raise anything with regards to that issue,  A147.

Elliot Zaretsky testified: testified that he got along well with appellant until the breakdown of the marriage, he also testified that the emails were necessarily sent intentionally because of hate; evident from having planned and filed his daughter Feige's divorce action with a team of big lawyers, A165;  evident from the arrest of Harold made by Feige;  evident from the arrest of Elliot by appellants son Nachman on threats to kill Feige and her children, A165; claiming this threat claim was false; evident from a hearsay statement, A165;  that appellant wanted to get two million dollars from appellee, Elliot did not state the name nor a time or date when the hearsay took place, A125, 165.

Elliot Zaretsky also testified listing many of the statements made in the email showing they were false: the emails were false and that among others he never rerouted Braille's; that the charges against him were dismissed for lack of evidence; that the charges against Harold were dismissed, because Feige beat up his son rather, A128; that he was not debarred by the veterans department, A145; that he never lied in any court; that he never withheld support from Feige or the children, A128, 154.

Elliot Zaretsky also testified while reading a statement from the emails, that it was Harold who filed for divorce, A144.

During cross examination appellant while questioning Elliot Zaretsky in regards to his arrest, seeking to show his testimony as it relates to hate was not truthful, and similarly thereafter on other questions, the court stopped appellant who was then unable to elicit and show Elliot was untruthful, and that no hate existed, A172.

During the trial after appellant stated he was going to testify on his own behalf, as he had planned and also notified appellees who made it part of their pre-trial memorandum filed on October 29, 2013, A88. Appellant was then discouraged and made to believe that it was improper for him to testify and that his questioning will be interrupted by the court, and it will be a bizarre and unacceptable act, A192.

19

Appellant did not testify or introduce as a result, and proceeded to make closing arguments, A192.

Appellees counsel then made his closing arguments claiming again that Elliot Zaretsky testified and showed how appellants hated him by having sought to get two million dollars; by falsely arresting him, A128;  by having sent the outrageous emails which was so found by the state court;  and by having planned and filed for Harold's divorce;  it proved a willful and malicious intention. A199.

### The Bankruptcy court's decision and judgment

On June 19, 2014 the court issued a decision, A210, 220.  The decision was based on the state court preceding being preclusive, and finding that the state court judgment was liability and preclusive against appellant, and that the state had already found that appellant had sent and authored the emails, A210, 220.

The court in determining the aforementioned stated that appellant after having filed an answer in state court but the state court subsequently having issued a default and unopposed summary judgment against appellant, was preclusive and decisive of liability and that appellant had sent and authored the emails.  The court also stated that appellant by not testifying and not having explained it's conduct and intention in sending and authoring the emails, left no doubt that appellants intention. A218.

The decision was entirely based on the court's ruling already stated during trial that the defamation action was preclusive. The court also stated that as part of determining that appellant hated appellees it relied upon a hearsay statement of Elliot Zaretsky, the court stated that appellant by not having objected to the admissibility of the inadmissible hearsay statement, waived his right, A217.

### The motion to alter or amend judgment

On July 3, 2014 appellant filed a motion to alter judgment pursuant to FRCP Rule 59, A10. Appellees did not file any response for over two months, when the court issued an order on September 11, 2014 directing appellant to re-serve the motion on appellees counsel, the court then gave appellees nearly another seven weeks to file a response by October 29, 2014, and also ordered a hearing on November 5, 2014, A221.

Appellant then sent a letter to the court stating that the motion had already been served more than two months prior, and that pursuant to the rules they had to request an extension and permission to file and to show excusable neglect before the court may allow them to file a response, appellant requested that in the minimum the court should allow enough time for appellant to file a timely reply if appellees file a response to the motion, A223.

21

Thereafter, on October 29, 2014 appellees filed an objection raising among others the issue that the state court finding was preclusive of the arguments appellant raises, and that there was a necessary finding that the emails were false, and that appellant sent them, and did not explain his conduct at trial in Bankruptcy court by not testifying at trial, R. at 1153 (ECF 1.40).

In response to the objection raising the aforementioned, appellant filed a reply in a hurried manner on November 4, 2014, showing that there was no preclusion because there was no finding under New York State Law; that even if there was a finding, there should be no preclusion; that a Bankruptcy court may or should look behind the state court judgment if there was no full or fair opportunity; or there was fraud involved; in addition to the general principles of NYS law on preclusion,  A227, 244.

The court held a hearing on November 5, 2014 and ultimately denied the motion on November 7, 2014, A245-259.

Appellant then timely filed the notices of appeal from the decision and judgment after trial on November 7, 2014, A262,  and thereafter a filed a notice of appeal from the denial of the motion to reconsider on November 20, 2014, A263. This court issued a scheduling order on May 22, 2015 to file the instant brief by June 29, 2015.

# Argument

## I. The Court in finding a Willful and Malicious Intent, Improperly Applied Preclusion under New York Law.

### A. Unopposed Default Summary Judgment is Not Preclusive

### Introduction and Procedural History

The court made a finding of willful and malicious intent as to appellant, however, this finding was based upon a finding that the defamation action was preclusive as to any issue or allegation appellees had raised in the State court proceedings. Similarly, the court ruled that any issue decided at the damages inquest was also preclusive, A57-58; A146-147; A205, A215-216, and on the reconsider motion hearing, A253-256, 258. Appellant was therefore unable to litigate and prove that there was no willful or malicious intent.

Appellees had argued that issue preclusion applies here because the defamation action was a default summary judgment, and all issues and allegations were deemed admitted, and had preclusive affect in a Federal Court under New York law, and that the inquest court had also determined issues which were adopted by the State court. Appellees also argued that appellant had a full and fair opportunity evidenced from the numerous motions to vacate the unopposed summary judgment, which were denied. R. at 561-563 (ECF 1-14); R. at 880, 883-885 (ECF 1-20); A197-199; A225-226; A258.

Appellant on the other hand argued that issue preclusion should not apply, because under New York Law there is no preclusion from an unopposed default summary judgment, and that notwithstanding appellant did not have a full and fair opportunity to litigate in the State court, as detailed somewhat in appellants cross motion statement, and in the motion response, R. at 585 (ECF 1-18); R. at 890 (ECF 1-21); A57-58; A193-194; R. at 586-587 (ECF 1.18); R. at 893, 895-896 (ECF 1.21). Reconsider) A228-230; A232-236; A253-256.

Specifically, appellant argued that he did not have a full and fair opportunity to litigate the those motions to vacate, because they were denied based on the denial of the first motion to vacate, which was drafted and submitted by David Wacholder who misrepresented himself as an attorney and wrongly advised appellant, and that the State court denied the motion with a single sentence denied stating no reason, and the sub sequent motions were denied as law of the case of the first denial.

However, the court ruled that since appellant had defaulted in the state action, the action was preclusive as to both the liability as well as any issues subsequently decided in the inquest.

### Analysis

In applying preclusion to New York State court proceedings, the Federal Courts apply New York law, Evans v. Ottimo, 469 F.3d 281 (2nd Cir., 2006).

24

The second circuit in Kelleran v. Andrijevic, 825 F.2d 692, 694 (2nd Cir., 1987) held, that under New York Law when a party defaults in answering, and an inquest is held for damages, the defaulting party may no longer contest liability issues.

This was further explained and clarified by the court in Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2nd Cir., 2004), that this was rooted in ancient common law axiom that when a party defaulted in litigation, the default is an admission of all well-pleaded allegations against that party.

In Teddy Bear the Vermont Teaddy Bear Company was granted summary judgment against Robert Schwimmer, after he had notice but failed to answer a motion for summary judgment. The district court had granted the motion by simply endorsing the notice of motion and adopting the proposed order giving no reasons to the order. After Schwimmer appealed the court reversed the order.

The court in explaining the reason distinguished an unopposed default summary judgment motion from any other default, stating that this ancient policy does not apply to summary judgment principles, as a court must evaluate and determine from the record if there is no genuine dispute of facts, even if the motion was unopposed, the court clarified the difference between a motion under Rule 55 and Rule 56. The court explained that a court must make determinations on a

25

motion for summary judgment particularly to show that the movant was entitled to summary judgment, other then in a regular default where the court makes no determinations other then the default itself.

The court further explained that in a motion for summary judgment, the non moving party does not have an obligation and does not forefeit any right if it does not answer, as the court has the duty to determine if the motion may be granted under the summary judgment principles, while upon a regular default a party does have to answer or it forfeits its right to do so and in doing so it is deemed an admission to the allegations.

The court in Teady Bear then held that a court may not grant a motion for summary judgment based just on a party not opposing.

Subsequantly, the second circuit again clarified its position of Teady Bear in Jackson v. Fed. Express, 766 F.3d 189 (2nd Cir., 2014), further clarifying that a motion for summary judgment must have at least some reasoning, and that no reasoning and a simple unopposed summary judgment becomes like any other default, which is not permitted in summary judgment.

In Jackson, the court affirmed the grant of a summary judgment motion by the district court to Federal Express against an employee, after the non moving party had participated in discovery, and had also opposed the motion summary

judgment through counsel at least partially, and the district court stated in the order that FedEx was entitled to the relief reasoning that the motion had full citations to the record and that the employee had not opposed and therefore abandoned the bulk of the claims against FedEx.

The Jackson court distinguished the FedEx case from Teddy Bear on three seperate grounds, one, that the emplyee had counsel and had at least partially opposed the motion, where in Teddy Bear the non moving party was pro se and had not opposed the motion at all.  The court also stated that in FedEx the district court had not treated the motion as a default and rather gave the reason albeit not an elaborate one, where in Teddy Bear, the order gave no reason except it was unopposed and was therefore like a default which is impermissable.

Accordingly, a grant of an unoposed motion for summary judgment without reasoning, when granted and treated as a default, carries therefore no admision to any of the allegations, and the defaulting party is free to still contest any liability issues, as opposed to any other defaulting party who may not. This is as stated because the court found that since a summary judgment motion may not be granted like a default, it therefore does not carry the same penalties of a default.

27

The Jackson court also emphasiszed that this rule in Teddy Bear applies with even more is even more so in the case of an unopposed summary judgment motion against a pro party.

Subsequantly, in 2006 a losing party who had a default unopposed summarry judgment issued against him, appealed to the Appellate Division First Department in Liberty Taxi Management, Inc. v. Gincherman, 32 AD3d 276, 820 N.Y.S.2d 49, 2006 NY Slip Op 6207 (N.Y. App. Div., 2006), after he suceeded to vacate the default but not before the court ordered a security bond until the disposition of the case due to his prior default.

In that case counsel for the losing party had defaulted on discovery and failed to appear for numeours conferences, however the party retained new counsel on the eve of the hearing for summary judgment, while unable to make a timely opposition, the court granted the default of the unpposed summary judgment. When the losing party managed to vacate the default, but was ordered to post bond, he appealed, the appeals court vacated the bond order stating that a default must be vacated when the default was not wilful as in that case where he sought and retained new counsel upon prior counsels default.

The appellate division stated that a summary judgment should not be granted on an unopposed basis as in a default, and cited apprvingly to the Teady bear case

in second circuit, thus the first department had in doing so established that under New York Law an unopposed summary judgment does not carry the same principles as that of a regular default.

Thereafter, in 2009 the Appellate Division Second Department, similarly ruled in Ramos v. City of New York, 61 A.D.3d 51, 872 N.Y.S.2d 128, 2009 NY Slip Op 636 (N.Y. App. Div., 2009) that an unopposed default summary judgment does not fall under the same principles of a regular default, in ruling that a losing party on an unopposed summary judgment motion is not bound to seek vacatur under NY CPLR 5015(a)(1) as one would need to do on a regular default, nor would one be limited to the one year time limit of NY CPLR 5015(a)(1), ruling that one may seek to renew the summary judgment motion rather then seek to vacate with no time limit. In doing so the court cited to Liberty Taxi that a summary judgment may not be granted upon a default.

Moreover, in the Ramos case the court had granted the unopposed summary judgment motion on the merits and explained its reasons that the moving party was entitled to it, still the appellate division compared the granting of such a summary judgment motion as being unopposed as in Liberty Taxi and Teddy Bear, even though it was on the merits, and the court distinguished such default from all other defaults requiring to move under NY CPLR 5015(a)(1).

29

In Ramos, the plaintiff party had filed an action against the defenandats for false arrest among other claims, thereafter the plaintiff was convicted, and the defendants moved for summary judgment, the plaintiff did not oppose and the court granted the motion unopposed on the merits.

Thereafter, plaintiffs conviction was overturned, and he moved to renew the prior unopposed summary judgment motion. The court ultimately vacated the prior unopposed summary judgment, the defendants then appeald that plaintiff should have moved to vacate pursuant to CPLR 5015(a)(1) and not on a motion to renew.

The appeals court ruled that this was not neccessary as an unopposed motion cannot be granted just on default, and an unopposed motion may therefore be vacated by a motion to renew whether the summarry judgment was on the merits or not. While the dissent in that case disagreed and argued that the plaintiffs case should have been dismissed as a sanction for his prior counsel defaulting on the unopposed motion for summary judgment, the dissent agreed that such sanction can only be as a sanction to dismiss, and cannot act as a regular default, he cited the Liberty Taxi and Teddy Bear case for that proposition. Accordingly, the Ramos court held that an unopoosed summary judgment be it on the merits or not, does not act as a regular default, though a sanction to dismiss plaintiffs complaint may still happen.

There remains one additional case in the Appelate division Second Department, S.D.I. Corp. v. Fireman's Fund Ins. Companies, 617 N.Y.S.2d 790, 208 A.D.2d 706 (N.Y.A.D. 2 Dept., 1994). In that case FIreman's Fund the surety sought to litigate its own liability after the principal had defaulted on an unopposed summary judgment motion.

The plaintiff argued that an unopposed summary judgment motion is preclusive as to all parties, and does not share the same principal of an ordinary default upon failing to answer, arguing that the surety is therefore precluded from litigating its liability.  The court disagreed, stating that an unopposed summary judgment may be granted on defaulting procedural grounds rather then on the merits, hence no issues are decided then. Although this position may seem contradictory to the Teddy Bear line of cases, it is not meccessarily so.

The S.D.I. court further stated that an unopposed motion which did not determine any issues other then the words it s was unopposed, is not a judgment on the merits and has no preclusion therefore.

This principle would seem contradictory to the long established policy that a defaulting party admits to the well-pleaded allegations, even though such default judgment is not rendered on the merits and is only a mere procedural default as a sanction, since a procedural default is never on the merits. However, it is not

31

neccessarily so, since S.D.I. will concur to Teddy Bear that because a summary judgment must always be on the merits equal to a trial, it therefore does not share the same policy and philosophy of ordinary procedural defaults.

Hence, even if SDI permits a procedural default or sanction on an unopposed summary judgment, it can not be on the merits, and it is never preclusive of liability or other issues unless the order was determined on the merits pursuant to summary judgment principles. The S.D.I. in differentiating between the two type of defaults, neccessrily joins Teddy Bear, Jackson, Liberty Taxi, and Ramos.

## Applicability

In the instant Bankruptcy proceeding, the court as previously stated held that despite the unopposed summary judgment not having determined any issues, and despite being on default, see unoppossed order at A25, nonetheless it was still preclusive as to liability and the allegations raised in that proceedingunder the principle that a procedural default under New York Law is preclusive as the allegations and liability is admitted on default.  Under New York Law as explained there can be no preclusion in such case.

Moreover, appellant should be free not only to contest and litigate liability and any issues, as not having been determined previously in the unopposed order, but appellant should also be able to litigate any issue allegedely having ben

determined in the inquest or adopted by the state court, including that appellant did not author nor send the emails, A40; A47.

The Referee in his report stated, A40, that on the default inquest te only issue to determine was a dollar amount assesement of damages, stating the policy that on a default all travesable allegations are deemed admitted, hence this langaugae coupled with appellees error that the unopposed summary judgment gave rise to a preclusive liability is totally and neccessarily preclusive of any issues.

However, as stated, not only was the unopposed order not preclusive, the inquest proceeding and ensuing adoption order was also not preclusive, because since the reffering court had not determined any issue on the unopposed order, liability remains not preclusive and the allegations are not admitted, the court's adoption of the report cannot grant more authority to itself and cannot be more preclusive then what it had when it reffered the matter to inquest.

Additionally, under New York law CPLR 4212 when the trial is done by the court, as in this case where the summary judgment was granted by the court, and no trial had been reffered to a referee, the authority of the referee is limited to a specific issue the court referes to a referee, if no specific issue has been reffered, then the referee is without authority.

In the instant defemation case the state court refereed only the issue of damages and as noted by the referee, A25. Moreover, the language of the reffering order although after stating the issue of damages it also state all issues shall be determined. However, since the unopposed judgment left no issues to be determined except for damages, the referee was without authority.

Notwithstanding, and even if the order did refere all issues for whatever they may have been, the NY CPLR 4212  had not been complied with, as a specific issue had to be specified.  Similarly, NY CPLR 4311(b) allows only an issue or a specific cause of action to be reffered to a reffree, or the issue of damages.  Here the court only refered the issue of damages, while a blanket referral of all issues carries no weight, as the appelate division stated in, Caplan v. Winslett, 637 N.Y.S.2d 967, 971,  218 A.D.2d 148 (N. Y. A. D. 1 Dept., 1996).

In any event, as stated since the court had granted the judgment unopposed without determining any issues, and without specifying similarly what issue the refferee should report apart from damages, the entire state proceedings is not preclusive, to either liability or to any other issue.

The aforesaid arguments apply equally well to res judicata as it does to issue preclusion.

Appellant being a victim in the email scheme, and being precluded from contesting and litigating the issues that he had not sent or created the emails, or that the meails were true staments and not malicious, is prejaudiced in that he was unable to prove that there was no wilful and malicious intent. There can be no intent on a silent act. Letting the judgment stand will serve extreme harm to appellant, and is not in public policy interest in favoring both justice as it does finality.

Accordingly, appellent requests that the judgment be vacated and in the minimum granted a trial de novo.


## B. Appellant Had no Full or Fair Oppurtunity.

Appellant had raised the issue that he had no full and fair opportunity as detailed in the statement of facts, however the Bankruptcy court had not considered the issue before trial, even after appellant had raised it in the cross motion for summary judgment, and appellant was denied a chance to litigate and argue the issue at trial.

Appellant had not had a chance to argue as the court permitted appellant to delay opening and rebuttal arguments until closing summation and after all testimony, however during cross examination of the first witness, the court made a

ruling stating it will not try the issue any longer, without a chance for appellant to argue, A174. During closing argument appellant attempted to argue again but the court did not consider the issue.

Appellant raised the issue numerous times during the proceedings, including on the motion to alter or amend judgment on the reply and at the hearing, and the court did not consider the argument, R. at 561-563 (ECF 1-14);  R. at 880, 883-885 (ECF 1-20);  A197-199;  A225-226;  A258.

Under New York Law collateral estoppel should not be denied when a party did not have a full and fair opportunity, and the court should examine estoppel on a case by case basis.  Bankruptcy courts look to many factors in deciding preclusion and whether the debtor had a full and fair opportunity.

While an pending appeal does not stop preclusion, it is one among many other factors for the court to consider whether the party had a full and fair opportunity to litigate. Connecticut General Life Ins. Co. v. Cole, 821 F.Supp. 193, 201 (S.D.N.Y., 1993)

Appellant had raised many issues as stated in the statement of fact, showing that he had no full and fair opportunity in the defamation action, including being misguided by David Wacholder who misrepresented himself as attorney and misguided appellant.  However, the Bankruptcy court neither considered the issues,

nor gave appellant a chance to raise them during the trial. Similarly appellant raised on his post trial motion the same issue and the court did not consider.

Appellees argued that appellant had a fair chance as he brought numerous motions to vacate, which were denied, however, they were all denied stating it was law of the case, and based upon the first denial of Justice Feinman on the motion submitted by Wacholder, which had no substance, the court gave no reason whatsoever as to the denial.

Ultimately, when appellant got rid of Wacholder after being apprised he misrepresented himself being an experienced attorney, another motion to vacate was filed, however Justice Feinman recused himself immediately, and Justice Mc Carty denied the second motion based upon the first one, and giving no reason other than being the law of the case.

Appellant in not having fully briefed the issue of his not having a full and fair opportunity should be afforded a chance to supplement the record with more evidence and a statement of facts presenting the circumstances of how appellant was deprived of any opportunity to litigate the state action.

Appellant in not having had any opportunity to litigate in the state action, is harmed being unable to prove his innocence and that there was no willful and

malicious intent, as appellant would otherwise be able to prove that there had been no intent at all.

Accordingly, Appellant requests that the court vacate the judgment and grant a trial de novo, allowing to fully and fairly litigate the issues.

### C. There is No Preclusion if the State Action was Procured by Fraud

Appellant raised numerous issues with regards to appellees having fraudulently procured the state defamation action, the court did not consider it, and did not allow appellant to raise it, A55, 102.

The court although relying in its decision on Kelleran for the default preclusion issue, overlooked that it stated a court may look behind a state court judgment if a party alleges it was procured by fraud.

Appellant never had a chance to litigate this issue, as the state court had never considered anything, discarding everything as law of the case, refferéing to the original Wacholder motion to vacate denied by Justice Feinman, who recused from the case afte appellant filed his first proper motion to vacate after Wacholder's motion. Thus, appellant never had a chance to raise and litigate the issue.

Had appellant been able to raise the issue of fraud, appellant would have been able to prove that not only was there no wilful and malicious, but that

appellant should have been discharged as a matter of law, and without a trial. Appellant was prejudiced in not being afforded a chance to raise the issue, and have a fair trial and to be discharged, and should be entitled to fully raise the issue sourround the fraud procurement of the defemation action, and be discharged swiftly without further harm.

Accordingly, appellant seeks vacatur of the judgment to allow a fair trial allowing to fully raise the issue of fraud procurement.

## II. Record is Insufficient For a Finding of Willful and Malicious Intent

The court made a finding of malicious intent, based on the testimony of Elliot, and that a malicious intent was present because appellant hated that appellant expected to procure two million from Elliot's family in connection with the Family court proceeding, A217. The court relied on a hearsay inadmissible statement of Elliot in reaching the finding.

Elliot testified specifically, that appellant had planned and initiated the divorce of Harold and appellants daughter Feige Zaretsky, with lawyers all lined up, and that appellant did not get what the two million he expected from him, Elliot testified that the source of the two million dollar statement came from Harold who in turn heard it from a friend, who in turn heard it from Feige, and who in turn heard from her Father, A165.

39

Appellant, not being an attorney, had not even had a chance on the spur of the moment listening to this story, to realize that he may object to this hearsay. However the court taking appellants silence as a waiver in relying upon Cameron v. Int'l Trading Co., Inc. v. Hawk Importers, Inc., 03-CV-02496 JS, 2010 WL 4568980 at *4 (E.D.N.Y. Nov. 2, 2010), that not having objected to a hearsay evidence is a waiver, indeed in that case it was an attorney rather than a pro se who was fully familiar with the evidentiary rules, and not his first time in a trial, and the court states that he may have been ignorant to the hearsay but that is not an excuse.

Secondly, the Cameron case cited and relied upon US v. Local 1804-1, Intern. Longshoreemen's Ass'n, 812 F. Supp. 1303, 1323 (S.D.N.Y., 1993), in that case court stated that the party had a long notice that the government was going to use the hearsay evidence and was well aware that its admissibility was in question with the court, nonetheless that defendant disregarded it, hence it was deemed waived.

Appellant never waived it, he had not even realized during trial what Elliot was trying to say, and appellant had no other opportunity to testify on his own to refute this statement among other statements of Elliot, only upon receipt of the transcript many months later appellant realized what Elliot was saying.

Notwithstanding, the U.S. Supreme Court recently held that a litigant in consent or waiver to a right whether express or implied, must still be fully knowing

40

and voluntary. Appellant certainly did not waive or consent knowingly nor voluntarily, Wellness Int'l Network, Ltd. v. Sharif, U.S. No. 13-935, 575 U. S. ____ , Pg. 22, (May 26, 2015).

The court did not inquire with appellant whether such waiver was knowingly, and in such instance it should not be deemed a waiver, Weisfelner v. Blavatnik (In re Lyondell Chem. Co.), 467 B.R. 712, 722 (S.D.N.Y., 2012).

The court in relying on the testimony of Elliot for a finding of willfulness on hearsay testimony that was not knowingly and voluntarily waived, shall not be admissible.

Similarly, Elliot who testified that appellant hated him, because he planned and filed for Harold's divorce with lawyers lined up, showing that appellant had hated him, had contradicted himself, when he testified earlier that it was indeed Harold who filed for divorce and not appellant, A144, 165. Hence it was these two things that Elliot used to convince the court on the issue of Malice.

As the court stated that all doubts must be narrowly construed in Debtor's favor, A216, since there was no waiver on the admissibility of the hearsay, and since Elliot testified that it was not appellant who planned with hate the divorce to get the two million dollars from Elliot's family, but rather Harold, therefore the impression of hate and malice fall away. The court's finding must be vacated, as in

41

the minimum there remains a strong doubt as to appellants intent of malice, as it was based on testimony of hate for which there remains no testimony of circumstances.

Appellant had been harmed by this testimony in that the court made a finding of willful and malicious based on this testimony from Elliot.

Accordingly, appellant requests that the judgment be vacated and appellant be discharged from the debt.

## III. Appellant Did Not Get A Fair Trial.

Appellant' was not given a fair trial, in that he had been misled and unable to prepare for trial, unable to testify, and unable to properly cross examine Elliot.

Appellant had originally planned to testify on his own behalf, A88. During the trial when appelant was about to call himself as a witness, the court dissuaded appellant from testifying, the court in stating that appelants own testiony is beyond the courts understanding, and that it is beyond the court, and that appelants questioning will be bizzare, had caused appellant to believe that it was improper and that the court did not wish that he testify on his own behalf.

Appellant, had been unable to prepare any other witness, as appellees had not kept their promise and the court's instruction at a hearing, A63-64, that the parties exchange pre-trial memorandum, and appellees gave the pre-trial

42

memorandum to appellant on October 29, 2013, a week ahead of trial, and while appellees had conveyed to the court that their case and issues were not yet clear, appeellant had no idea how to pepare his defense, which hinged upon appelless case and pre-trial memorandum.

Speficially, on July 22, appellees counsel stated that there was no clear finding in the state court that appellant sent or authored the emails, and the court is seen agreeing to it, A63-64, however, when appellant recived the pre-trial memorandum for the firt time, it showed that their case hinged on there having been a finding in state court.

Appellant who up until that point had prepared witnness to testify that he did not sent or author the emails, and that it was Wacholder, now realized on the eve of trial that his preperation was not worth anything, as the court indeed made such a ruling early on in the trial and appellant had not gotten a chance to find other witnness or evidence to prove he had no intent and certainly no malicious intent. It was too late already.

Appellant also did not get any chance to prepare his arguments that there was no finding or that preclusion should not apply, as he was under the impression from July 22, that this issue was not an issue appelllees planned to use.

43

Appellees had not been timely with the pre-trial, had changed course on the eve of trial, and appellant when he tried to raise the issue with the court by filing a motion and also during a hearing on October 28, 2013, the court ignored the issue.

Additionally, appellant during trial attempted to question Elliot on the testimony he gave about appellants son Nachman having had arrested him, in order to show Elliot was not truthful on that testimony, and to prove there was no hate whatsoever, however the court stopped appellant from questioning because appellees counsel objected it was not relevant, despite he testified that this showed wilfullness and hate by appellant.

Appellant because he was unable to testify, unable to prepare a meaningful defense due to appellees actions or inactions, unable to properly cross examine the witness for lies and to elicit relevant testimony to prove there was no hate, had been prejudiced and deprived of his right to a fair trial and due process, this resulted in the court making a finding of wilful and malicious against appellant with as the court stated that appellant did not testify and did not call any witness.

Accordingly, appellant requests the court to vacate the judgment and discharge appellant.

## Conclusion

For all of the reasons set forth herein and based upon the record before the Court,

appelelant respectfully requests this Court should enter an order reversing the

decision of the Bankruptcy Court, and determining that the obligation of Berlin to

Maxi-Aids Inc., and Zaretsky, is discharged.


Dated:  June 22, 2015
Brooklyn, New York

S/ _____

AHRON BERLIN
Defendant Pro Se
1909 New York Avenue
Brooklyn, NY, 11210
347-254-3532

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
AHRON BERLIN,

                          Appellant,        Index No. 15-cv-0014 (JMA)

        -against-                          15-cv-0015

ELLIOT ZARETSKY, HAROLD ZARETSKY,    Appeal From
SHIRLEY ZARETSKY, AND MAXI-AIDS, INC.,    Bankr. Case No. 12-AP-08371

                        Appellees.
--------------------------------------------------------x

## CERTIFICATE OF SERVICE

        The undersigned Ahron Berlin, a person over the age of eighteen, hereby declares and certifies as follows:

        That on June 30, 2015 I served a copy of the annexed papers Appellants Opening Brief and Appendix, by first class mail delivery to Mr. Brian J. Hufnagel, Esq., Forchelli, Curto, Deegan, Schwartz, Mineo & Terrana, LLP, attorney for appellee in the above-captioned proceeding, by depositing a true copy of same enclosed in a properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Postal Service, within the State of New York. To: "The Omni, 333 Earle Ovington Blvd, Suite 1010, Uniondale, New York 11553.

Dated:  June 30, 2015
       Brooklyn, New York

                                      S/
                                         Ahron Berlin

1

Official Form 17C (12/14)

[This certification must be appended to your brief if the length of your brief is calculated by maximum number of words or lines of text rather than number of pages.]

## Certificate of Compliance With Rule 8015(a)(7)(B) or 8016(d)(2)

This brief complies with the type-volume limitation of Rule 8015(a)(7)(B) or 8016(d)(2) because:

☑   this brief contains [9,080] words, excluding the parts of the brief exempted by Rule 8015(a)(7)(B)(iii) or 8016(d)(2)(D), or

☐   this brief uses a monospaced typeface having no more than 10½ characters per inch and contains [state the number of] lines of text, excluding the parts of the brief exempted by Rule 8015(a)(7)(B)(iii) or 8016(d)(2)(D).

_____          Date: June 29, 2014 _____
Signature

Ahron Berlin:

_____