<u>**15-CV-0014**</u>
<u>**15-CV-0015**</u>

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AHRON BERLIN,

                Appellant,

     -against-

ELLIOT ZARETSKY, HAROLD ZARETSKY,
SHIRLEY ZARETSKY, AND MAXI-AIDS, INC.,

                Appellants.
------------------------------------------------------------X
ELLIOT ZARETSKY, HAROLD ZARETSKY,
SHIRLEY ZARETSKY, AND MAXI-AIDS, INC.,

                Plaintiffs,          Adv. Pro. No. 8-12-08371-reg

     -against-

AHRON BERLIN,

                Defendant.
------------------------------------------------------------X

**<u>APPELLEES' BRIEF</u>**

                        By: Brian J. Hufnagel, Esq.
                        Forchelli, Curto, Deegan, Schwartz,
                        Schwartz, Mineo & Terrana, LLP
                        333 Earle Ovington Blvd., Suite 1010
                        Uniondale, New York 11553
                        Tel. No. (516) 248-1700
                        Fax No. (516) 248-1729
                        Bhufnagel@forchellilaw.com
                        *Attorney for Appellees*

## **Bankruptcy Rule 8012 Corporate Disclosure Statement**

Appellee Maxi-Aids, Inc. states that it is not a publicly held corporation and that no publicly held corporation owns any stock in Maxi-Aids, Inc.

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................................1

JURISDICTIONAL STATEMENT ........................................................................2

STATEMENT OF THE ISSUES PRESENTED......................................................2

STATEMENT OF THE CASE................................................................................2

STATEMENT OF FACTS .....................................................................................4

SUMMARY OF ARGUMENTS............................................................................9

ARGUMENT ......................................................................................................10

POINT I The Bankruptcy Court Correctly Gave *Res Judicata* Effect to the
Defamation Judgment .........................................................................................10

POINT II Appellant had a Full and Fair Opportunity to Litigate in State Court ....14

POINT III The Bankruptcy Court Correctly Found Willful and Malicious Intent .15

POINT IV Appellant Received a Fair Trial...........................................................17

CONCLUSION ....................................................................................................18

Certificate of Compliance with Rule 8015 ...........................................................19

# TABLE OF AUTHORITIES

**Cases**

*Cameron Int'l Trading Co., Inc. v. Hawk Importers, Inc.*, 03-CV-02496 JS, 2010
WL 4568980 (E.D.N.Y. Nov. 2, 2010) *aff'd,* 501 F. App'x 36 (2d Cir. 2012)....17

*Evans v. Ottimo*, 469 F.3d 278 (2d Cir. 2006)..........................................................14

*In re Ahmed*, 359 B.R. 34 (Bankr. E.D.N.Y. 2005)...................................................13

*In re Ferrandina*, 533 B.R. 11 (Bankr. E.D.N.Y 2015) ...........................................15

*In re Krautheimer*, 210 B.R. 37 (Bankr. S.D.N.Y. 1997)........................................10

*In re Slater*, 200 B.R. 491 (Bankr. E.D.N.Y. 1996) .................................................15

*Jackson v. Federal Exp.*, 766 F.3d 189 (2014) ........................................................11

*Kelleran v. Andrijevic*, 825 F.2d 692 (2d Cir. 1987) ........................................ 10, 13

*Ramos v. City of New York*, 61 A.D.3d 51 (1st Dept. 2009) ....................................12

*Roche v. Claverack Co-op. Ins. Co.*, 59 A.D.3d 914, 874 N.Y.S.2d 592 (Sup. Ct.
App. Div. 3rd Dept. 2009) ....................................................................................9

*S.D.I. Corp. v. Fireman's Fund Ins. Co.*, 208 A.D.2d 706 (2d Dept. 1994) ...........12

*Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.,* 373 F.3d 241 (2d Cir. 2004)
.................................................................................................................................11

**Statutes**

11 U.S.C. § 523(a)(6)...................................................................................... 1, 2, 16

## PRELIMINARY STATEMENT

This is an appeal from a decision after trial and judgment entered on June 19, 2014 (A. 210, 220)[1] (hereinafter the "Decision") which determined that the debt owed by appellant Ahron Berlin ("appellant" or "Berlin") to the appellees is excepted from discharge under 11 U.S.C. § 523(a)(6) and from an order entered on November 7, 2014 (A. 260) (the "Reconsideration Order") adhering to that determination on reconsideration.

*Pro se* appellant Berlin filed a voluntary bankruptcy petition seeking to discharge a judgment entered against him in New York Supreme Court in the aggregate amount of $1,290,000.00 based on a finding that the appellant sent false and defamatory statements via email to third parties regarding appellees. Appellee's commenced an adversary proceeding seeking to except that debt from discharge.

The Bankruptcy Court correctly gave *res judicata* effect to the Defamation Judgment finding that the issues concerning liability and damages were resolved. The sole question at trial was "whether the defamatory statements were made by the Debtor with the requisite intent to render them nondischargeable under Section 523(a)(6)." (*See* Decision A. 210). Through his appeal, appellant continues his

_____

[1] Citations herein are to the appendix filed by Appellant and to the docket entries from the electronic index which were included in the record.

conduct of making outlandish allegations against the appellees, unsupported by the record of the case, and amplifies for the Court the willful and malicious nature of his conduct.  Despite having been told, repeatedly, that his actions are improper and violate State and Federal law, the appellant will not stop disparaging appellees. The Bankruptcy Court correctly found intent and nothing in the appellant's brief provides any basis to change that holding.

## JURISDICTIONAL STATEMENT

The appellee agrees with the appellant's statement of jurisdiction.

## STATEMENT OF THE ISSUES PRESENTED

The appellee agrees with the appellant's statement of the issues.

## STATEMENT OF THE CASE

On May 15, 2012, the Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code.  On June 19, 2012, the case was voluntarily converted to chapter 7.  A no asset report was filed by the chapter 7 trustee on February 12, 2013.

On September 24, 2012, the Plaintiffs commenced this adversary proceeding (A. 19) seeking to except from discharge, pursuant to 11 U.S.C. § 523(a)(6), a judgment (the "Defamation Judgment") obtained in New York Supreme Court against the Defendant in the aggregate amount of $1,290,000.00 plus interest and fees.  The Defamation Judgment was based on a finding that the Debtor sent false

and defamatory statements via email to third parties regarding appellees. (*See* Report of Special Referee, A. 40-44).

The adversary proceeding went to trial before the Bankruptcy Court on November 5, 2013. The appellees presented evidence establishing, independently of the State Court decisions, that the Debtor's actions constituted willful and malicious injury pursuant to the Bankruptcy Code and thus the appellees' claims were nondischargeable. All told, appellees called two witnesses and submitted twenty-five (25) exhibits. The Debtor failed to call any witnesses, including failing to call himself, submitted eight exhibits, and failed to establish that his conduct was not conducted willful and malicious.

On June 19, 2014, the Court issued the Decision and found in favor of appellees. (*See* A. 210). The Court held that the debts owed by the Defendant to Plaintiffs are nondischargeable pursuant to 11 U.S.C. § 523(a)(6). Judgment was entered in favor of plaintiffs on June 19, 2014. (*See* A. 220).

On July 3, 2014, the Debtor filed his Motion for Reconsideration of the Judgment. The Motion contained one outrageous accusation after another allegedly based on snippets of news articles or decisions in prior unrelated litigation (that did not involve the Debtor).

To earn his discharge the Debtor was required to explain his conduct and rebut appellees' showing that his conduct was willful and malicious. The Debtor

failed to make that showing at trial and continued his malicious conduct in the motion for reconsideration and on appeal.

The court heard the motion for reconsideration and, on November 7, 2014, entered an order denying the motion.

This appeal followed on November 20, 2014.

## STATEMENT OF FACTS

The relevant factual background was fully set forth by Judge Grossman in the Decision.  (A. 211).

Elliot Zaretsky ("Elliot") is the founder and owner of Max-Aids, Inc. ("Maxi-Aids"), a company that sells equipment and products designed to enhance the lifestyles of individuals with special needs, such as those who are blind or deaf. Elliot and Shirley Zaretsky ("Shirley") are the married parents of Harold Zaretsky ("Harold"). Harold was married to and subsequently divorced from the debtor/appellant Ahron Berlin's ("Ahron" or the "Debtor") daughter, Feige Zaretsky ("Feige"). The divorce was bitter and contentious.

Subsequent to the entry of the Judgment of Divorce, Ahron and his daughter sent voluminous emails to various third parties which contained statements which they knew to be false about each of the appellees, which false and defamatory statements were made with the malicious and willful intent to defame, injure and disparage the appellees and their good reputations.

4

On September 26, 2008, subsequent to the entry of the Judgment of Divorce, the appellees commenced a libel action in the New York State Supreme Court, Nassau County (the "State Court"), against the Debtor and Feige (the "Defendants").   The emails were incorporated by reference in the State Court complaint and include the following statements highlighted by Judge Grossman in the Decision:

a. "The Zaretskys have no problem coming up with unlimited funds to pay for lawyers and other court expenses, but have trouble coming up with money for this poor deaf starving mother and her three children."

b. "They brazenly use the courts as a way to try to rid of Faige and use the children as weapons against their own mother."

c. "We believe the information we are sending to you illustrates that the Zaretskys are experienced in implementing corrupt tactics by manipulating the court system as ping pong balls and instruments of abuse against Faige Zaretsky, an innocent victim."

d. "The whole world is in shock. Nobody will tolerate husbands who deprive their wives of food . . . who owe a million in child support and attorney fees . . . who uses every trick to delay paying maintenance and CS . . . who try to steal children from a devoted mother . . . who own over two thirds of the shares of Maxi and lied in court that Harold owns nothing."

e. "If Harold is mentally incompetent, must the must the court appoint a representative for him?"

f. "He [Harold] chooses to follow his father's lead for profit and possibly the fun of

stealing and abusing his wife."

g. "Mother Shirley to encourage him to yell at his wife, control his wife, and even punch his wife – gives him 5000 dollar presents every month!"

h. "It is grandmother Shirley who hates Feige and wants revenge."

i. "The OWNERS of Maxi-Aid's Corp. began using the army of lawyers of Maxi-Aid's Corp. and all the strategies they learned in 15 years of hostile corporate strategies."

j. "The very same Shameless team of lawyers of Maxi-Aid's Corp. that was convicted in the supreme court many times of stilling [sic] from the blind and veterans constantly for more than ten years."

k. "'rerouted' donated most critical medical supplies from poor countries, is an

intentionally famed Schemer – debarred from Veterans' Admin contracts – assessed 3 million fine – once filed chapter 11."

l. "Do the hospitals and companies who deal with Maxi AIDS know that all their

paperwork is false and no such corporation exists?"

m. "Is the NYS Certificate of Incorporation totally fraudulent and a nullity as it is based on false information?"

n. "Let us sing a Maxi song 'steal cheat lie for a bigger piece of pie, conspire scheme plot for an even blacker pot."

(A. 212-213).

The Defendants filed an Answer in the State Court action, and on November 10, 2008, the Plaintiffs moved in the State Court for summary judgment on their defamation claims. The Defendants failed to file a timely opposition. The Plaintiffs' motion was granted on January 9, 2009. The order issued by Justice Feinman states as follows: "Plaintiffs' unopposed motion for summary judgment is granted."

The matter was referred to a Special Referee for an inquest to determine damages. After a trial on the issue of damages, at which the Defendants did not appear, the Special Referee concluded that Elliot, Harold, and Maxi-Aids each sustained damages in the amount of $380,000.00, and Shirley sustained damages in the amount of $150,000.00. The Special Referee's report found, as to each of the twenty-three claims for libel contained in the complaint, that the Debtor's default established his liability "with regard to the allegations of publishing these false, malicious and defamatory statements." The Special Referee's report and recommendations were adopted by the State Court, and judgment (the "Defamation Judgment") was entered in favor of the Plaintiffs against the Defendants jointly and severally.

All of the Defendants' motions to vacate the judgment have been denied. On July 27, 2010, the State Court issued an order entered on July 30, 2010, which denied the Debtor's motion to vacate his default on the appellee's motion for summary judgment. The Debtor moved again to vacate, and on September 16, 2010 the State Court entered an order dated September 13, 2010 denying the Debtor's motion to vacate his default. Not to be deterred, the Debtor filed a third motion to vacate which was denied by order dated December 22, 2011.

On May 15, 2012, the Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code. On June 19, 2012, the case was voluntarily converted to

chapter 7 by the Debtor.  On September 24, 2012 the Plaintiffs commenced an adversary proceeding to except from the Debtor's discharge the amounts awarded pursuant to the Defamation Judgments.

On May 30, 2013, the Plaintiffs moved for summary judgment asserting that the State Court's prior determination and judgment "conclusively determined that the [Debtor's] debts to the Plaintiffs result from willful and malicious injury." Plaintiffs contended that the doctrine of collateral estoppel barred re-litigation of whether the Debtor's conduct was willful and malicious, and that the judgments should be excepted from discharge under section 523(a)(6).  The Debtor cross-moved for summary judgment to dismiss the complaint.  The Bankruptcy Court denied both motions and held that the doctrine of *res judicata* barred the Debtor from re-litigating liability and damages for defamation as to each plaintiff; however, the findings made by the State Court were insufficient to establish as a matter of law that the debt was nondischargeable under section 523(a)(6) of the Bankruptcy Code. Because a finding of defamation could be made based on negligence by the defendant under New York law, and the record from the State Court proceeding was not clear as to the Debtor's intent, a hearing would be necessary to determine whether the Debtor's conduct was willful and malicious, as required under section 523(a)(6). *See Roche v. Claverack Co-op. Ins. Co.*, 59 A.D.3d 914, 916, 874 N.Y.S.2d 592, 595-96 (Sup. Ct. App. Div. 3rd Dept. 2009)

(defamation can be established upon varying levels of intent, including negligence.).

A trial was held on November 5, 2013. The appellees called Elliot and Feige to testify. At trial, the following exhibits were admitted: appellees' 1-25; Debtor's B, C, I, J(b), J(c), J(d), J(h), J(j). The exhibits include the letters referred to in the State Court complaint. The Debtor called no witnesses and argued on his own behalf. The Debtor questioned Elliot and Feige briefly and made a closing statement. The Debtor argued that he never wrote or sent the defamatory emails and urged this Court to disregard the Defamation Judgment based on alleged deficiencies in the appellees' State Court motion for summary judgment and in the State Court's order granting the motion.   In his closing statement, the Debtor referred to the appellees' motion for summary judgment in the State Court action as "moronic," "empty" and "void." (Trial Tr. p. 99-100). The Debtor offered no reasonable explanation for sending the emails or for their outrageous contents.

## SUMMARY OF ARGUMENTS

The Decision of Judge Grossman should be affirmed in all respects.  First, the Bankruptcy Court correctly gave *res judicata* effect to the Defamation Judgment and refused to revisit the merits of that case.  The Defamation Judgment conclusively established the Debtor's liability for defamation and the amount of

damages.   The only issue left at trial was whether the Debtor's sending of the defamatory emails was willful and malicious.   The Bankruptcy Court correctly found that the Debtor's statements were willful and malicious.   Finally, the Debtor's arguments regarding his opportunities to litigate in State Court and the trial process in Bankruptcy Court must be rejected.   This Debtor has received every opportunity to prove his defense, and he has simply failed to do so.

### ARGUMENT

### POINT I
### The Bankruptcy Court Correctly Gave *Res Judicata* Effect to the Defamation Judgment

Judge Grossman was correct in his analysis of the law.   A final determination by a State Court is entitled to *res judicata* effect in a dischargeability proceeding brought before the Bankruptcy Court on all issues that were fully and finally determined.

In the Decision, Judge Grossman held as follows:

As set forth above, the State Court judgment resolved a number of issues, including the Debtor's liability for defamation and the amount of damages.  This Court must afford full faith and credit to the State Court judgment, which is *res judicata* as between the Plaintiffs and the Debtor as to both liability and damages. *See In re Krautheimer*, 210 B.R. 37, 52 (Bankr. S.D.N.Y. 1997). *See also Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2d Cir. 1987) ("The bankruptcy court … was bound to give preclusive effect to the default judgment

obtained in the state court by [the Plaintiff] to the same extent as would a New York court."). Therefore, the issue before this Court is "not whether the state court decision was correct, but whether the defamation judgment [is] dischargeable under § 523(a)(6)." *In re Salem*, 290 B.R. 479, 482 (S.D.N.Y. 2003) (citing *Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2d Cir. 1987)). Because liability for defamation and damages had already been established as a matter of law, the trial was limited to determining whether the defamatory statements were made by the Debtor with the requisite intent to render them nondischargeable under section 523(a)(6).

(Decision A-215).

The first issue presented by this appeal is whether the above finding by Judge Grossman is a correct interpretation of the law.

The Debtor incorrectly contends that a decision granting summary judgment, based on an unopposed motion, does not entitled to preclusive effect. However, his analysis is incorrect.

The Debtor's reliance on *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.,* 373 F.3d 241 (2d Cir. 2004) and *Jackson v. Federal Exp.*, 766 F.3d 189, 197 (2014) is misplaced. *Vermont Teddy Bear* dealt with the analysis that the District Court must undertake when evaluating an unopposed summary judgment motion. *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.2d at 246 (moving party must establish that the undisputed facts entitle him to "a judgment as a matter of law"). Similarly, *Jackson v. Federal Exp.*, 766 F.3d at 197, involved the standards for granting an unopposed summary judgment motion stating, "a district court may not enter a default judgment … it must examine the movant's statement

of undisputed facts and the proffered record support and determine whether the movant is entitled to summary judgment." These cases do not apply here because the standards for a District Court to grant an unopposed motion for summary judgment, and the level of review required, have nothing to do with this case.

Similarly, *Ramos v. City of New York*, 61 A.D.3d 51 (1st Dept. 2009) does not evaluate whether an order granting summary judgment on default is entitled to *res judicata* effect. In *Ramos,* the plaintiff's criminal conviction for fraud was reversed, and this reversal constituted new evidence which the plaintiff could rely upon in bringing a motion for renewal. Again, the issue here is not whether the Debtor can move for renewal or reargument before the state court to vacate the summary judgment decision (as he has done at least three times already), but whether the Defamation Judgment is entitled to *res judicata*.

The final case on this topic submitted by the Debtor, *S.D.I. Corp. v. Fireman's Fund Ins. Co.*, 208 A.D.2d 706 (2d Dept. 1994), is also distinguishable. That case examined whether the default of a contractor bound the other non-defaulting defendant, a surety. The court held that "a judgment entered against a principal upon default is only prima facie evidence against the surety." *Id.* at 708. The facts of *S.D.I. Corp. v. Fireman's Fund* do not apply here because this case does not involve the application *res judicata* to a third party.

None of the cases cited by the Debtor analyze the *res judicata* effect that must be given by a Bankruptcy Court to a summary judgment award granted by a state court. Those cases deal with whether summary judgment has been properly granted – a subject for an appeal and/or motion before the State Court. The standards for a District Court to grant summary judgment are not relevant to this appeal because the summary judgment decision was from the New York State courts. If the Debtor believes that summary judgment was improperly granted, his remedy was to appeal that decision, or move for reargument – both of which remedies he made use of. But as it stands today, and at the time of trial, the summary judgment decision was final and entitled to preclusive effect.

*Res Judicata* applies in dischargeability actions. *See In re Ahmed*, 359 B.R. 34, 39 (Bankr. E.D.N.Y. 2005) ("Preclusive effect will be given to a prior decision finding willful and malicious injury in determining whether a debt is nondischargeable under § 523(a)(6)"). Judge Grossman correctly gave preclusive effect to the Defamation Judgment finding that it resolved "the Debtor's liability for defamation and the amount of damages."

Finally, as the Second Circuit made clear in *Kelleran v. Andrijevic*, 825 F.2d 692 (2d Cir. 1987), in the context of a dischargeability proceeding, a state court default judgment is entitled to *res judicata* effect regardless of whatever defenses the debtor may have had in the state court action. *See also Evans v. Ottimo*, 469

F.3d 278 (2d Cir. 2006) ("Bankruptcy proceedings may not be used to re-litigate issues already resolved in a court of competent jurisdiction").  By entering the judgment, the State Court established the Debtor's liability for defamation and the amount of damages.  The Bankruptcy Court was bound to uphold those determinations.

## POINT II
## Appellant had a Full and Fair Opportunity to Litigate in State Court

In granting *res judicata* effect to the Defamation Judgment, the Bankruptcy Court correctly determined that the Debtor had a full and fair opportunity to litigate the defamation claims in state court.  There is no dispute that the Debtor was aware of the State Court Action, that he failed to timely submit opposition papers in response to the summary judgment motion, and that he failed to appear at the inquest before the Special Referee.  The Debtor also had the opportunity to move for reconsideration or to renew – on three separate occasions – and to file an appeal.  These opportunities to litigate that the Debtor had before the State Court are more than sufficient to meet the standard for a "full and fair opportunity."

The Second Circuit holds that a litigant has a full and fair opportunity to litigate when the litigant was properly served, fails to respond, and fails to participate in the case.  *Evans v. Ottimo*, 469 F.3d 278, 282 (2d Cir. 2006).  The Debtor's choices before the State Court regarding how and whether to defend the

case on the merits, were his own and did not effect a deprivation of an opportunity to litigate.  When a debtor is properly served with a state court complaint, fails to respond to the complaint, and fails to appear for the subsequent inquest, the debtor was provided a full and fair opportunity to litigate.  *Id.; see also In re Ferrandina*, 533 B.R. 11, 24-25 (Bankr. E.D.N.Y 2015) (debtor had full and fair opportunity to litigate despite defamation judgment being entered on default).

Additionally, in his brief in conclusory fashion, the Debtor argues that preclusion should not apply because the Defamation Judgment was procured by fraud.  (App. Br. at 38).  A judgment can be attacked on grounds of fraud "only when the fraud is committed by the adverse party."  *In re Slater*, 200 B.R. 491 (Bankr. E.D.N.Y. 1996).  The request for relief based upon fraud must be denied because fraud in obtaining the judgment by appellees is not alleged, and did not occur.  The only allegation in support of his fraud claim is the Debtor's statement that "the state court had never considered anything."  (App. Br. at 38).  Grounds for the fraud exception have not been alleged and do not exist.

### <u>POINT III</u>
### <u>The Bankruptcy Court Correctly Found Willful and Malicious Intent</u>

The sole issue presented at trial was whether the Debtor's defamatory statements were made with willful and malicious intent.  In the Decision, Judge Grossman outlines the factual basis for his finding of willful and malicious intent as follows:

- the extreme nature of the defamatory statements leave no doubt that the Debtor sought to harm the reputations of the Plaintiffs

- the Debtor made the statements because he hated Elliot and Elliot's family

- the Debtor expected to procure $2,000,000 from Elliot's family in connection with the family court proceedings

- When Elliot "didn't let him get away with it," the Debtor retaliated by sending the defamatory emails

- The sheer number and outrageous nature of the statements establishes that the Debtor was not merely reckless as to their truth or falsity, but rather knew the statements were false

- the Debtor gave no explanation for his conduct, nor did he present any evidence to rebut the Plaintiffs' showing that his actions were anything other than "willful and malicious."

- The Debtor did not call any witnesses, nor did he elicit any testimony from either of Plaintiffs' witnesses that was relevant to the issue at trial, namely the Debtor's intent for purposes of section 523(a)(6).

(A. 217-218).

More than sufficient evidence was found by the Bankruptcy Court to make a finding that the Debtor made the defamatory statements with willful and malicious intent under 11 U.S.C. § 523(a)(6).

In his appellate brief, the Debtor argues that the finding of malicious intent should be reversed because the Bankruptcy Court relied on a hearsay statement. (App. Br. at 39, *see also* Decision, A. 217 at fn3 discussing the alleged hearsay statement).  As Judge Grossman found, whatever objection the Debtor may have had to this testimony was waived.  "[T]he Debtor waived his right to object to the

testimony, and the Court may consider it. *See Cameron Int'l Trading Co., Inc. v. Hawk Importers, Inc.*, 03-CV-02496 JS, 2010 WL 4568980 at *4 (E.D.N.Y. Nov. 2, 2010) *aff'd,* 501 F. App'x 36 (2d Cir. 2012)." (*See* Decision, A. 217). The Debtor's hearsay objection was waived and thus must be rejected on appeal.

<u>**POINT IV**</u>
<u>**Appellant Received a Fair Trial**</u>

Finally, appellant asks that the trial decision be vacated because he claims he did not receive a fair trial. The appellant's arguments in this point should be rejected because he does not cite to any authority that would support reversing or vacating the Decision. (App. Br. at 42). A trial judge has broad discretion as to how to conduct the pretrial and trial aspects of the case. Here, Judge Grossman carefully supervised and managed these processes with a *pro-se* litigant and a change of counsel for appellees shortly before trial. The judge used a pretrial statement and order process so that all exhibits would be submitted and reviewed for admissibility/objections in advance of trial. At trial, the judge appropriately excluded testimony on topics unrelated to the issues at trial including topics already ruled upon. The administration of the adversary proceeding was well run by Judge Grossman – indeed not a single discovery objection was filed. The Debtor's brief is a "sour grapes" hindsight complaint. No reasons whatsoever exist, legally or factually, that would support an application for a new trial.

## <u>CONCLUSION</u>

The judgment below should be affirmed.  The Bankruptcy Court found the Defamation Judgment to be nondischargeable pursuant to 523(a)(6) based on the overwhelming weight of evidence showing that the false and outrageous statements were made with willful and malicious intent.

Dated:  Uniondale, New York
        August 11, 2015

FORCHELLI, CURTO, DEEGAN,
SCHWARTZ, MINEO & TERRANA, LLP

By:   /s/ Brian J. Hufnagel
    Brian J. Hufnagel
333 Earle Ovington Boulevard - Suite 1010
Uniondale, New York 11553
(516) 248-1700
bhufnagel@forchellilaw.com

Attorneys for Appellees Elliot Zaretsky, Harold Zaretsky, Shirley Zaretsky, and Maxi-Aids, Inc.

18

## Certificate of Compliance with Rule 8015

Certificate of Compliance With Type-Volume Limitation,

Typeface Requirements and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. Bankr. P. 8015(a)(7)(B) because: this brief contains 4,135 words, excluding the parts of the brief exempted by Fed. R. App. P. 8015(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 8015(a)(5) and the type style requirements of Fed. R. App. P. 8015(a)(6) because: this brief has been prepared in a proportionally spaced typeface using Word 2007 in Times New Roman, 14 point size (12 point size for footnotes).

Dated:  Uniondale, New York
       August 11, 2015

                FORCHELLI, CURTO, DEEGAN, SCHWARTZ, MINEO & TERRANA, LLP

                By:___/s/ Brian J. Hufnagel_____
                  Brian J. Hufnagel
                333 Earle Ovington Boulevard - Suite 1010
                Uniondale, New York 11553
                (516) 248-1700
                bhufnagel@forchellilaw.com

                Attorneys for Appellees Elliot Zaretsky, Harold Zaretsky, Shirley Zaretsky, and Maxi-Aids, Inc.

19