UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
AHRON BERLIN,

                Appellant-Debtor,

      -against-

ELLIOT ZARETSKY, HAROLD ZARETSKY,
SHIRLEY ZARETSKY, AND MAXI-AIDS,
INC.

                Appellees.
-------------------------------------------------------------X

For Online Publication Only

**ORDER**
15-CV-14 (JMA)
15-CV-15 (JMA)

**AZRACK, United States District Judge:**

      Before the Court is <u>pro se</u> Appellant Ahron Berlin's appeal of the June 19, 2014 decision of the Bankruptcy Court (Grossman, J.), which held that a state court judgment against Berlin was nondischargeable because Berlin's actions were "willful and malicious" under 11 U.S.C. § 523(a)(6). Berlin also appeals the Bankruptcy Court's subsequent order denying Berlin's motion for reconsideration. For the reasons stated below, the Bankruptcy Court's decision and order denying reconsideration are AFFIRMED.

## I. Background

      Familiarity with the record below is assumed.

      For the past ten years, the parties to this appeal have been involved in several bitter litigations in state and federal court. Berlin's daughter, Feige Zaretsky ("Feige") was married to Harold Zaretsky ("Harold"). (Statement of Ahron Berlin in Supp. of Cross Mot. and in Opp'n to Summ. J. ("Berlin Statement") ¶ 9, ECF No. 1-17.)[1] Beginning in September 2004, Feige and

---

[1] Unless otherwise noted, all citations herein refer to docket number 15-cv-15.

Harold became embroiled in acrimonious and lengthy divorce proceedings. (Id.) Harold's father, Elliot Zaretsky ("Elliot") is the owner of Maxi-Aids, Inc. ("Maxi-Aids"). (Appellees' Br. at 4, ECF No. 10.)

During the divorce proceedings, Berlin retained David Wacholder to represent Feige in certain "divorce related matters." (Berlin Statement ¶ 20.) Wacholder represented himself as a "New York State licensed attorney and experienced litigator." (Id.) As explained below, Berlin contends that Wacholder was actually not an attorney.[2] (Id.)

In September 2008, Maxi-Aids, Elliott, Harold, and Shirley Zaretsky (collectively, the "Maxi-Aids Plaintiffs") sued Berlin and Feige (collectively, the "Berlin Defendants"), in New York state court, alleging that the Berlin Defendants sought to destroy their reputations by sending false and defamatory emails to various third parties, including several Maxi-Aids' employees. (Appellees' M. Summ. J., Ex. D, ECF Nos. 1-7−1-9.) Wacholder also allegedly represented the Berlin Defendants during the litigation of this defamation suit. (Berlin Statement ¶ 30.) In November 2009, the state court entered a $1.29 million judgment against the Berlin Defendants. (Id. ¶ 4.) Over the next two years, the Berlin Defendants filed multiple motions seeking to vacate the judgment, all of which were denied. (App. to Appellant's Br. at A30−38, ECF No. 7-1) Berlin maintains that in July 2010, he learned that Wacholder "was not a licensed attorney, and that he was even ignorant in writing English." (Berlin Statement ¶ 134.) It appears that, after July 2010, the Berlin Defendants proceeded pro se in state court.[3]

---

[2] It appears undisputed that Feige's primary attorneys during the divorce proceedings were experienced counsel.
[3] As discussed infra, the papers filed by the Berlin Defendants in support of their various motions to vacate are not part of the record here. Accordingly, it is impossible to determine the quality of those papers or whether the Berlin Defendants received any assistance in filing the motions pro se.

2

The Berlin Defendants have filed numerous appeals of the state court's judgment and its orders on their motions to vacate. (Appellant's Reply Br., Ex. 2, ECF No. 12-1.) In May 2012, Berlin filed for bankruptcy, which stayed his appeals in state court; all of these appeals are apparently still pending. (Appellant's Br. at 14, ECF No. 7.) It does not seem that Berlin sought to lift the bankruptcy stay to allow those appeals to be decided.

After Berlin filed for bankruptcy, the Maxi-Aids Plaintiffs commenced an adversary proceeding and requested that the state court defamation judgment be declared nondischargeable under Section 523(a)(6) of the Bankruptcy Code. (Decision After Trial at 1, ECF No. 1-35.) Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor . . . ." 11 U.S.C. § 523(a)(6). The Maxi-Aids Plaintiffs moved for summary judgment, arguing that "the state court findings were res judicata . . . [and] satisfied each element required under section 523(a)(6)." (Id. at 1.) Although the Bankruptcy Court granted that motion in part and "agreed that the findings regarding the dollar amount of the debt and the defamation claim were res judicata . . ., [the Bankruptcy Court also concluded that] the state court record was insufficient to conclude that [Berlin's] conduct was "willful and malicious" within the meaning of section 523(a)(6)."[4] (Id. at 1–2.) Accordingly, the Bankruptcy Court held a trial on the discrete question of whether Berlin's actions were willful and malicious. The Bankruptcy Court ultimately concluded that they were and declared that the state court defamation judgment was not dischargeable. (Id. at 2, 9–10.)

---

[4] At oral argument on the parties' summary judgment motions, the Bankruptcy Court stated that it was denying the Maxi-Aids Plaintiffs' motion for summary judgment. However, other portions in the transcript indicate that the Bankruptcy Court actually denied that motion in part and granted it in part. Additionally, in its "Decision After Trial," the Bankruptcy Court states, in a discussion of the motion, that the court "agreed" with the Maxi-Aids Plaintiffs that "the findings regarding the dollar amount of the debt and the defamation claim were res judicata." Accordingly, this Court views the Bankruptcy Court's decision as granting the motion for summary judgment in part and denying it in part.

## II. Discussion

### A. Standard of Review

The Bankruptcy Court's grant of summary judgment and all other conclusions of law are reviewed de novo. In re Ionosphere Clubs, Inc., 922 F.2d 984, 988 (2d Cir. 1990). The Bankruptcy Court's factual findings are reviewed for clear error. Id. The Bankruptcy Court's evidentiary decisions are reviewed for abuse of discretion. Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006). Trial management decisions are also generally reviewed for abuse of discretion. United States v. Yakobowicz, 427 F.3d 144, 149–50 (2d Cir. 2005).

Even if a district court does not "'agree with every conclusion reached by the Bankruptcy Court,'" the district court "'may affirm the decision on any ground supported in the record.'" Brown Publ'g Co. Liquidating Trust v. AXA Equitable Life Ins. Co., 519 B.R. 13, 21–22 (E.D.N.Y. 2014) (quoting In re Caldor, Inc.-NY, 199 B.R. 1, 2 (S.D.N.Y. 1996)).

A pro se party's pleadings and briefs are liberally construed "to raise the strongest arguments they suggest." Hamlett v. Santander Consumer USA Inc., 931 F. Supp. 2d 451, 455 (E.D.N.Y. 2013) (quoting Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007)). However, "a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Olle v. Columbia Univ., 332 F. Supp. 2d 599, 607–08 (S.D.N.Y. 2004) aff'd, 136 F. App'x 383 (2d Cir. 2005) (citations omitted). Moreover, even pro se litigants must first raise arguments below in order to preserve them for appeal, Dilworth v. Cont'l Const. Co. Inc., 282 F. App'x 330, 333 (5th Cir. 2008), and cannot raise arguments for the first time in their reply briefs, Guzzo v. Cristofano, 719 F.3d 100, 112 (2d Cir. 2013).

**B. Berlin's Rule 60 Motion**

In docket number 15-cv-14, Berlin filed a motion under Federal Rule of Civil Procedure 60 seeking to vacate the Bankruptcy Court's judgment. (Appellant's Mot. Relief from J., 15-cv-14 ECF No. 9.) That motion is denied as it was improperly filed in this Court. Any arguments that Berlin wished to make concerning the Bankruptcy Court's judgment should have been raised in his appellate briefs.

**C. Berlin's Collateral Estoppel Arguments**

    **1. Standard for Collateral Estoppel**

The preclusive effect of the state court defamation judgment is governed "by the rules of the state where the prior action occurred—here, New York." In re Sokol, 113 F.3d 303, 306 (2d Cir. 1997) (citations omitted). Under New York law, "collateral estoppel bars relitigation of an issue when (1) the identical issue was necessarily decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." Evans v. Ottimo, 469 F.3d 278, 281 (2d Cir. 2006). "Once these requirements are satisfied, estoppel extends to all matters comprehended by the earlier judgment, whether or not actually litigated or considered, insofar as they are necessary to the prior decision." O'Connor v. G & R Packing Co., 426 N.Y.S.2d 557, 562 (N.Y. App. Div. 2d Dep't 1980), aff'd, 53 N.Y.2d 278 (1981).

    **2. The State Court's Judgment Determined that Berlin Committed Defamation and that Berlin Sent and Created the E-mails**

Berlin argues that this Court should not give preclusive effect to the state court decision that granted the Maxi-Aids Plaintiffs summary judgment on liability or to the state court's findings from the subsequent damages inquest.

Berlin's argument concerning the state court's summary judgment decision rests on three premises: (1) that, under New York law, a court should not grant summary judgment merely because the opposing party fails to submit an opposition; (2) that the state court granted summary judgment against Berlin merely because he failed to oppose the motion; and (3) that when a court improperly grants summary judgment on that basis, the court's decision should not be given preclusive effect. Although Berlin is correct about the first point—that New York state courts should not grant summary judgment merely because the motion is unopposed—Berlin's other two premises are flawed.

First, the January 9, 2009 summary judgment order does not indicate that the state court granted summary judgment based solely on Berlin's failure to oppose the motion.[5] Second, even if the state court's grant of summary judgment was improper, none of the cases Berlin cites stand for the proposition that collateral estoppel is inapplicable in such circumstances. If the state court's grant of summary judgment was improper, Berlin should have raised that argument in state court, not in this forum. See Restatement (Second) of Judgments § 19 (1982) (stating that as a general rule, "errors underlying a judgment [should] be corrected on appeal or [through] other available proceedings to modify the judgment or to set it aside, and not made the basis for a second action on the same claim"). Third, even if the state court did treat the summary judgment motion as a motion for default judgment, default judgments can have preclusive effect for purposes of collateral estoppel—a point that Berlin concedes. (Appellant's Reply Br. at 10.)

As to the damages inquest, Berlin challenges the Referee's findings that Berlin sent certain e-mails and jointly composed e-mails with Feige. According to Berlin, those findings

---

[5] Notably, Berlin does not argue that the evidence before the state court on the summary judgment motion, which included the Maxi-Aids Plaintiffs' verified complaint, was insufficient to warrant granting summary judgment.

6

should not be given preclusive effect because the Referee did not have the authority to make them since the state court referred only the issue of damages to the Referee and those findings concerned liability.  Although it may be error for a trial court to rely on a referee's findings concerning liability when the trial court referred only the issue of damages, Berlin does not provide any authority for the proposition that such an error would prevent a subsequent court from applying collateral estoppel to such findings.  Again, as with Berlin's arguments regarding summary judgment, any alleged errors concerning the state court's adoption of the Referee's report should have been raised before the state court.  Moreover, the Referee's findings that Berlin sent certain emails and jointly composed emails with Feige were likely necessary to determine damages.  Accordingly, Berlin's arguments provide no basis to deny preclusive effect to the Referee's findings.

Finally, Berlin argues that because a defendant can commit defamation negligently under New York law, the state court could have granted the defamation judgment based on a finding that Berlin created and sent the emails negligently.  Thus, Berlin contends that for purposes of collateral estoppel, the state court's findings did not establish that he intentionally sent and created the emails.  Berlin waived this argument because he did not present it to the Bankruptcy Court and raised it for the first time on appeal in his reply brief.  Moreover, at the trial in Bankruptcy Court, Berlin never sought to introduce evidence that he negligently created or sent the emails.  Rather, Berlin argued that he did not send or create the e-mails and attempted to introduce evidence that Wacholder created and sent the e-mails. (Trial Tr. at 79–80, ECF No. 1-31.)

None of Berlin's arguments above establish that the Bankruptcy Court erred in giving preclusive effect to the state court's findings that he committed defamation and that he created and sent the emails.

### 3.  Berlin Had a Full and Fair Opportunity to Litigate

*i. Standard for the "Full and Fair Opportunity" Element*

Application of collateral estoppel does not require actual litigation.  In re Sokol, 113 F.3d 303, 306 (2d Cir. 1997).  While the party asserting collateral estoppel must demonstrate the identity of issues, the party opposing collateral estoppel "has the responsive burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action."  Id. at 306.  In assessing whether a litigant has received a full and fair opportunity, New York courts have identified several factors, including "1) the nature of the forum and the importance of the claim in the prior litigation; 2) the incentive to litigate and the actual extent of litigation in the prior forum; and 3) the foreseeability of future litigation (because of its impact on the incentive to litigate in the first proceeding)."  Id. (citing Ryan v. New York Tel. Co., 62 N.Y.2d 494, 501 (1984)).  Courts can also consider, inter alia, "'the size of the claim, . . . the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, [and] differences in the applicable law . . . .'"  In re Krautheimer, 210 B.R. 37, 52 (Bankr. S.D.N.Y. 1997) (quoting Schwartz v. Public Adm'r of Bronx, 24 N.Y.2d 65, 73 (1969)).  Ultimately, "the fundamental inquiry is whether relitigation should be permitted . . . in light of what are often competing policy considerations, including fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results."  Id. at 51.

Given the record that was before the Bankruptcy Court on summary judgment, the Bankruptcy Court did not err in concluding that the defamation judgment collaterally estopped Berlin from litigating the issues decided by the state court. Implicit in that conclusion was a finding that Berlin did not offer sufficient evidence to defeat summary judgment on the question of whether he had a full and fair opportunity to litigate—an issue on which Berlin bore the burden of proof. This Court agrees with that determination.

> ii. *Berlin Failed To Establish that He Did Not Have a Full and Fair Opportunity to Litigate*

In considering Berlin's appeal, the Court focuses on the specific record and arguments that Berlin presented to the Bankruptcy Court on summary judgment. Berlin's evidence on summary judgment consisted of his own 42-page sworn statement and various documents from the state court action. Berlin's 42-page sworn statement accused everyone involved in the state court action, including the state court judges, the Referee, and opposing counsel, of engaging in a "multi-level extrinsic fraud scheme." (Berlin Statement ¶ 6.)

Given these fantastical allegations, this Court cannot fault the Bankruptcy Court's interpretation of Berlin's unhelpful motion papers, which the Bankruptcy Court nevertheless sifted through and sua sponte identified issues that necessitated a trial. Moreover, in Berlin's summary judgment brief, his only reference to the full and fair opportunity element is a citation to a Tenth Circuit case laying out the various elements necessary to establish collateral estoppel. (Berlin's Mem. in Opp'n to Mot. and in Supp. of Cross Mot. for Summ. J. at 10–11, ECF 1-18.) And, in Berlin's brief below, he argued only that the judgment was procured through fraud and that the state court's one-sentence summary judgment decision should not be considered because

9

it was based solely on a "purported default."[6]  (Id.)  Now, on appeal, Berlin advances new arguments regarding the full and fair opportunity element and cites to numerous cases that he never presented to the Bankruptcy Court.[7]  In any event, even assuming that it is appropriate to consider these newly raised issues, Berlin's cases are all either distinguishable or irrelevant.  He has not established that he lacked a full and fair opportunity to litigate.

On appeal, Berlin appears to argue that he did not have a full and fair opportunity to litigate because:  (1) Wacholder mispresented himself as an attorney and gave Berlin deficient advice and representation[8]; (2) Berlin was not notified that the inquest hearing had been adjourned; (3) the motions to vacate were not decided on the merits; and (4) Berlin's state court appeals have all been stayed in light of his bankruptcy filing.  For the reasons stated below, these arguments are not persuasive.

At the outset, the Court stresses that a number of important factors in the full and fair opportunity analysis weigh heavily against Berlin, including that he had ample incentive to litigate the defamation claim, he filed numerous motions to vacate in state court, and he faced the same critical issues in both actions.  In arguing that he did not receive a full and fair opportunity to litigate, Berlin focuses on Wacholder's misconduct and his lack of notice that the damages inquest had been adjourned to a new date.  While these points—particularly the notice issue—raise some concerns, Berlin was not deprived of a full and fair opportunity to litigate.

---

[6]  Berlin's fraud argument is addressed infra.  His arguments concerning the state court's summary judgment order were addressed above.

[7]  Notably, the majority of Berlin's new arguments and cases are raised for the first time in his appellate reply brief.

[8]  Because the Bankruptcy Court granted summary judgment, the Court accepts, at face value, Berlin's assertions about his relationship with Wacholder.  (Berlin Statement ¶¶ 20−30.)  The Court, however, notes that the record as a whole casts doubt on Berlin's assertions.

Critically, Berlin had the opportunity to raise the notice issue with the state court through his multiple post-judgment motions to vacate the judgment. Berlin contends that the motions to vacate did not, in fact, provide him with a full and fair opportunity to raise the notice issue because: (1) Wacholder prepared the first motion, which Berlin asserts was "rambling, senseless and incomprehensive" (Berlin Statement ¶¶ 133, 157); and (2) all of the subsequent motions to vacate were denied simply because the denial of the first motion to vacate was considered the law of the case. There are multiple flaws with this argument.

Although Berlin introduced the state court orders on the motions to vacate into the summary judgment record below, Berlin did not provide the Bankruptcy Court with any of the actual motion papers.[9] This omission is critical. Essentially, Berlin is arguing that the initial motion to vacate was prepared so incompetently by Wacholder that it thwarted Berlin's full and fair opportunity to litigate. Of course, without knowing those papers' contents, neither this Court (nor the Bankruptcy Court) could possibly reach such a conclusion. Additionally, Berlin's subsequent motions to vacate, which Wacholder did not prepare, were also not part of the summary judgment record. Again, without knowing the substance of those papers, the Court cannot possibly conclude that those motions were insufficient to provide Berlin with a full and full opportunity to litigate. Finally, contrary to Berlin's assertion, not all of his subsequent motions to vacate were denied based on the law of the case. The state court's August 25, 2011 order that denied one of his motions addressed the substance of the newly discovered evidence that Berlin presented, finding that this evidence was inadmissible hearsay and, "even if [it was]

---

[9] In Berlin's appellate reply brief, Berlin asks this Court to take judicial notice of all filings in the defamation suit. The Court declines to do so—Berlin should have made this argument to the Bankruptcy Court. Moreover, with the exception of one document that Berlin attached to his reply brief, he has not even provided the Court with the documents that he asks the Court to take judicial notice of.

11

admissible at trial or upon summary judgment motion, [it] would not have changed the result."[10] Zaretsky v. Berlin, No. 17869-08, 2011 WL 3983180 (N.Y. Sup. Ct. Aug. 25, 2011) (unpublished).

Additionally, Berlin argues that two factors relevant to the full and fair opportunity analysis warrant denying collateral estoppel here. First, Berlin argues, correctly, that a party's pro se status, along with the "the competence and experience of counsel," are facts pertinent to this analysis. According to Berlin, Wacholder's misconduct and Berlin's pro se status should weigh heavily in his favor. In support of this argument, Berlin cites to two cases involving pro se litigants: Kosakow v. New Rochelle Radiology Associates, 274 F.3d 706 (2d Cir. 2001) and West v. Ruff, 961 F.2d 1064 (2d Cir. 1992). However, both of these cases are readily distinguishable from the instant litigation. Among other things, Berlin's first action was in court (not in an informal proceeding before an administrative agency) and, given the lengthy divorce proceedings between Feige and Harold Zaretsky, Berlin was not a complete stranger to the state court system.[11] In the end, Berlin's lack of competent counsel in the state court action is insufficient to tip the scales in his favor on this element, particularly in light of the other flaws in his arguments outlined earlier.

---

[10] The new evidence was the affidavit of Nathan Galant, a relative of Berlin, who claimed that, prior to the alleged defamation, he spoke with Wacholder and also overhead conversations between Wacholder and Elliot Zaretsky. According to Galant, Wacholder admitted: (1) that he sent the defamatory emails from Berlin's computer at Elliot's direction; and (2) that Elliot was blackmailing Wacholder with certain recordings. Zaretsky v. Berlin, No. 17869-08, 2011 WL 3983180 (N.Y. Sup. Ct. Aug. 25, 2011) (unpublished). Although neither party provided a copy of this order to the Bankruptcy Court or on appeal, the Court was able to obtain this order through the Westlaw electronic database. (None of the other potentially relevant papers from the state court action are available through Westlaw.) The Court notes that Berlin's appellate brief mentions the August 25, 2011 order in passing, stating only that the state court found Berlin's evidence to be hearsay.

[11] In Kosakow, the pro se plaintiff initially appeared before the New York State Division of Human Rights ("DHR"), which found no probable cause to believe that her employer had violated state discrimination law. 274 F.3d at 713. The plaintiff then filed a discrimination claim in federal court. Id. at 714. The Second Circuit held that

Finally, Berlin argues that the pendency of his state court appeals is a relevant factor in the full and fair opportunity analysis. While these appeals are a relevant factor, see Connecticut Gen. Life Ins. Co. of New York v. Cole, 821 F. Supp. 193, 201 (S.D.N.Y. 1993), they are not dispositive and are insufficient to demonstrate the absence of a full fair and opportunity in the state court proceedings. Notably, Berlin never even sought to lift the bankruptcy stay so that he could pursue his allegedly meritorious appeals in state court.

Given the above, Berlin has failed to demonstrate that he lacked a full and fair opportunity to litigate.

### iii. Berlin's Allegation that the Judgment Was Fraudulently Procured Is Without Merit

In some instances, fraud can establish that a party did not have a full and fair opportunity to litigate. New York law distinguishes between "extrinsic" fraud and "intrinsic" fraud. See In re Slater, 200 B.R. 491, 495-96 (E.D.N.Y. 1996). "Intrinsic fraud," which goes to the existence of a cause of action" and the "underlying issue in the original lawsuit" is not a defense to collateral estoppel. Id. (quoting Tammi v. Tammi, 328 N.Y.S.2d 477, 483–84 (N. Y. App. Div. 2d Dep't 1972)). Because intrinsic fraud does not deprive a litigant of a full and fair opportunity

---

she should not be collaterally estopped from re-litigation of certain issues. Id. at 735. Weighing the factors relevant to full and fair opportunity, the Second Circuit stressed: (1) the difference between litigation in court and the DHR proceeding, in which discovery was strictly limited; and (2) given Kosakow's pro se status before the DHR, she likely did not understand that those determinations—made by an administrative agency through proceedings far more informal than litigation in court—would preclude her from litigating related claims in federal court. Id. at 734–35.

In West, the plaintiff was a prisoner who was seriously injured in a fight with another inmate. 961 F.2d at 1065. The plaintiff, proceeding pro se, filed a negligence suit against New York State in the Court of Claims. Id. The plaintiff also filed a federal civil rights suit, in which the court appointed him counsel because his claim appeared to have merit. Id. While the federal action was pending, the negligence trial proceeded with only one day's notice to the plaintiff. Id. The plaintiff, who had no opportunity to alert his federal counsel or to find a relevant witness, tried the negligence suit pro se and lost. Id. at 1065–66. As a result, the Second Circuit refused to apply collateral estoppel to the federal action. Id. at 1066.

13

to litigate, courts will not look behind a prior judgment merely because the litigant alleges intrinsic fraud. Extrinsic fraud, however, goes to the litigant's full and fair opportunity and is "'some matter other than the issue in controversy in the action.'" Id. (quoting Chenu v. Board of Trustees, 212 N.Y.S.2d 818, 820 (N.Y. App. Div. 1st Dep't 1961)). Examples of extrinsic fraud are "threats of physical harm [to a witness] or the misrepresentation that [an] action would be discontinued." In re 231 Fourth Ave. Lyceum, LLC, 513 B.R. 25, 33 (Bankr. E.D.N.Y. 2014).

The Bankruptcy Court did not err in rejecting Berlin's fraud arguments. Most of Berlin's assertions of fraud raised below constitute intrinsic fraud and are irrelevant here. Berlin's only allegations that could possibly constitute extrinsic fraud are his claims regarding Elliot Zaretsky's relationship with Wacholder.

Berlin contends that Elliot engineered the entire defamation suit by blackmailing Wacholder into sending the defamatory emails from Berlin's computer. Berlin also suggests that Elliot interfered with Berlin's attempt to defend the resulting defamation suit by blackmailing Wacholder, who was simultaneously advising Berlin. However, the only evidence of this alleged Zaretsky/Wacholder conspiracy that Berlin submitted on summary judgment was Berlin's own conclusory statements regarding the existence of this conspiracy. (Berlin Statement ¶¶ 22–29.) Berlin's statements, however, did not indicate that he had any personal knowledge of this conspiracy. Accordingly, on summary judgment, there was no admissible evidence of the alleged extrinsic fraud and, thus, no basis for the Bankruptcy Court to conclude that Berlin was denied a full and fair opportunity to litigate.

On appeal, Berlin has provided the Court with the affidavit of Nathan Galant, which Berlin claims establishes the Zaretsky/Wacholder conspiracy. (Appellant's Mot. Relief from J., Ex. L.) This argument fails on various grounds. First, and most importantly, this evidence was

not presented to the Bankruptcy Court on summary judgment. Accordingly, that evidence is not properly before this Court on appeal.[12] Second, Berlin only provided the Galant affidavit to this Court as part of his improperly filed Rule 60 Motion. Third, even if the Galant affidavit were properly before this Court on appeal, Berlin ignores that the state court already considered this affidavit and found it lacking on the merits. As noted earlier, in an August 25, 2011 order, the state court concluded that the relevant assertions in the Galant affidavit were inadmissible hearsay and, even if they were admissible, that evidence would not have changed the outcome of the defamation action. Accordingly, Berlin has not shown that the Bankruptcy Court erred in rejecting Berlin's claims of fraud.

Finally, Berlin also suggests that the Bankruptcy Court erred by ignoring federal precedent that permits a Bankruptcy Court to invoke its equitable powers to look behind fraudulently procured judgments. In Margolis v. Nazareth Fair Grounds & Farmers Mkt., Inc., 249 F.2d 221, 222 (2d Cir. 1957), the Second Circuit held that, even when re-litigation might otherwise be barred by res judicata under applicable state law, Bankruptcy Courts can still exercise their equitable powers to look behind a state court judgment to prevent "fraud and collusion." See also Kelleran v. Andrijevic, 825 F.2d 692, 697 (2d Cir. 1987) ("Bankruptcy courts may look beyond a state court default judgment where the judgment was procured by collusion or fraud."). These cases, however, do not help Berlin. In Margolis, the Second Circuit disallowed a claim where the corporate debtor's president, who was personally indebted to a creditor, allowed the creditor to obtain a note from the corporation without providing any consideration. The parties then colluded to have the corporation agree to a confession of

---

[12] The Court notes that Berlin did attempt to introduce this document at the conclusion of the trial before the Bankruptcy Court. The Bankruptcy Court refused to admit the affidavit of Nathan Galant. That ruling was proper given that, inter alia, Galant could have been called at trial and, in any event, his testimony was not relevant to the discrete questions at issue in the trial.

judgment. Three months later, the corporation declared bankruptcy. Margolis involves the type of prototypical insider conduct that bankruptcy courts routinely address under their equitable powers. The instant case is markedly different and does not involve any concerns unique to bankruptcy that would warrant invoking the Bankruptcy Court's equitable powers here. See Kelleran, 825 F.2d at 697 (Blumenfeld, J., dissenting) (noting that the majority decision in Kelleran appeared to view the "fraud or collusion" exception "to refer only to acts such as those at issue in Margolis, . . . where the judgment was procured through collusion between the parties to the prior action, with the primary purpose of diminishing the access of other creditors, and the bankruptcy estate, to certain assets."). Accordingly, these cases do not provide a basis to reverse the Bankruptcy Court's judgment.

**D. Berlin's Challenges Concerning the Trial Are Meritless**

Berlin claims that the Bankruptcy Court improperly relied on hearsay evidence to which, as the Bankruptcy Court explicitly acknowledged, Berlin did not object. The Bankruptcy Court's reliance on that evidence was not an abuse of discretion. See In re Emanuel, 450 B.R. 1, 6 (S.D.N.Y. 2011) ("The Bankruptcy Court's evidentiary rulings are subject to review for abuse of discretion."), aff'd, 460 F. App'x 48 (2d Cir. 2012); see also In re Drexel Burnham Lambert Grp., Inc., 160 B.R. 729, 735 (S.D.N.Y. 1993) ("To reverse a ruling to admit evidence on hearsay grounds, Appellant must establish both an abuse of discretion, and that the ruling affected a substantial right." (citations omitted)). Moreover, even if the Bankruptcy Court should have excluded that evidence, its inclusion was harmless as there was ample other evidence in the trial record to support the Bankruptcy Court's conclusion that Berlin's actions were willful and malicious.

Berlin also contends that the Bankruptcy Court made comments to dissuade him from testifying on his own his behalf at trial. A trial court's attempts to deal with the difficult issue of testimony from a pro se party is reviewed for abuse of discretion. See United States v. Beckton, 740 F.3d 303 (4th Cir.), cert. denied, 134 S. Ct. 2323 (2014). The Bankruptcy Court's actions were not an abuse of discretion. Moreover, Berlin does not state what his testimony would have been or how it would have been relevant to the issues at trial. Accordingly, any error by the Bankruptcy Court regarding Berlin's testimony would have been harmless.

### III. Conclusion

The Court has considered Berlin's remaining arguments and finds them meritless. For these reasons, the Bankruptcy Court's decision and order denying reconsideration are AFFIRMED.

_____/s/_____
Joan M. Azrack
United States District Judge

Date:   September 30, 2015
        Central Islip, New York